# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1788

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Mark B. Davidson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 12, 2007
Filed: June 6, 2008

_____

Before RILEY, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Mark Davidson was charged with one count of unlawful possession of a firearm as a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1). Prior to trial, he moved to suppress evidence, including a firearm seized after his arrest. The district court[1] denied the motion. A jury convicted Davidson, and the district court sentenced him to 262 months' imprisonment. Davidson appeals the denial of his motion to suppress and the sentence imposed. We affirm.

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

## I.

On January 26, 2004, Officer Richard Woodley spotted a Ford Taurus, with no rear license plate, that matched the description of a vehicle reported stolen the day before. Woodley followed the vehicle, but quickly lost sight of it. A short time later, he saw the vehicle and a white man in a black hooded sweatshirt standing beside it. The man entered the car and drove away. Woodley followed and activated his lights and siren. The driver sped away, and Woodley found it abandoned a short time later.

When he located the car, Woodley saw one set of fresh footprints in the snow near the driver's side, leading away from the car. A witness came out of his house and told Woodley that the driver ran in the same direction indicated by the footprints. Woodley followed the trail of footprints and found a black hooded sweatshirt in the snow.

Detective Greg Lewis, who was called to the scene to assist in the chase, observed Davidson standing on a street corner a few blocks from where Officer Woodley found the abandoned car. When Davidson saw Detective Lewis, he ran back in the direction of Officer Woodley. Recognizing that he was surrounded, Davidson stopped and put up his hands. No one else was in the area at the time. Woodley placed Davidson under arrest and conducted a cursory pat-down search of Davidson's outer clothing.

According to evidence presented at trial, Woodley turned Davidson over to Officer John Olszowka, who put Davidson in his patrol car. On the way to the police station, Olszowka noticed that Davidson was making a lot of unusual movements in the back seat. When Olszowka stopped at the police station, he found a handgun in plain view in the back seat where Davidson had been seated.

Davidson was charged with one count of unlawful possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1). Davidson moved to suppress the firearm, claiming that the police did not have probable cause to arrest him as the driver of the stolen vehicle. A magistrate judge[2] recommended that Davidson's motion be denied, finding that the footprints in the snow leading to Davidson, and Davidson's flight upon seeing Detective Lewis, established probable cause that he was the driver of the vehicle. The district court adopted the magistrate judge's report and recommendation, and denied Davidson's motion to suppress. A jury convicted Davidson, and the district court sentenced him to 262 months' imprisonment. The court determined Davidson's offense level according to USSG § 4B1.4, based on a finding that Davidson was an armed career criminal for purposes of 18 U.S.C. § 924(e). This determination was premised on Davidson's prior convictions for sexual assault, attempted domestic assault, and resisting arrest by fleeing. (PSR ¶ 25).

## II.

Davidson first challenges the denial of his motion to suppress the handgun. He claims that the police did not have probable cause to arrest him, and that the handgun should have been suppressed as the fruit of an unconstitutional arrest. We review the district court's conclusion that there was probable cause *de novo*, and the underlying factual determinations for clear error. *Ornelas v. United States*, 517 U.S. 690, 698-99 (1996). "An officer has probable cause to make a warrantless arrest when the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *United States v. Torres-Lona*, 491 F.3d 750, 755 (8th Cir. 2007).

---

[2]The Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri.

-3-

Davidson argues that the officers lacked probable cause to arrest, because they did not have evidence that he was the driver of the stolen vehicle. We disagree. Officer Woodley saw only one set of footprints leading away from the vehicle. While following those footprints, Woodley found a sweatshirt that was consistent with the clothing that he had witnessed on the driver of the vehicle. As Woodley continued on the trail, he saw Davidson running from Detective Lewis. There was no one else in the area. The circumstantial evidence of Davidson's whereabouts in relation to the footprints, together with the consciousness of guilt suggested by Davidson's flight from Detective Lewis, are sufficient to lead a reasonably prudent person to believe that Davidson had been driving the stolen vehicle. Accordingly, we conclude that there was probable cause for the arrest, and the district court correctly denied the motion to suppress.

### III.

Davidson makes several challenges to his sentence, all of which relate to the district court's application of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). Without an enhancement under the ACCA, the maximum term of imprisonment for a person convicted of unlawful possession of a firearm as a previously convicted felon is ten years. 18 U.S.C. § 924(a)(2). But if that person has three previous convictions for a violent felony or serious drug offense, or both, which were "committed on occasions different from one another," then he is considered an "armed career criminal" under the ACCA, and the minimum term of imprisonment is fifteen years. 18 U.S.C. § 924(e). The district court found that Davidson had three qualifying convictions for violent felonies. In addition, under the advisory sentencing guidelines, the offense level for an armed career criminal is increased from 33 to 34 if the defendant possessed the firearm in connection with a crime of violence. The district court found that this provision applied to Davidson.

Davidson first argues that the district court erred in finding that he was an armed career criminal, because the sentencing enhancement was not alleged in the indictment, a jury did not find beyond a reasonable doubt that he had prior violent felony convictions, and the district court found that the sentencing enhancement applied using a preponderance of the evidence standard. These arguments are foreclosed by precedent. The fact of a prior conviction need not be charged in a felony indictment or submitted to a jury, *Almendarez-Torres v. United States*, 523 U.S. 224, 243-48 (1998); *United States v. Campbell*, 270 F.3d 702, 708 (8th Cir. 2001), and the district court may find facts regarding recidivism by a preponderance of the evidence. *United States v. Davis*, 260 F.3d 965, 969 (8th Cir. 2001).

Davidson next contends that the district court erred in determining that his offense level was 34, according to USSG § 4B1.4(b)(3)(A). This guideline requires a finding that the defendant possessed a firearm in connection with a crime of violence. The district court found that Davidson possessed a firearm in connection with the Missouri offense of tampering with an automobile by operation, which this court has held to be a crime of violence. *United States v. Bockes*, 447 F.3d 1090, 1092-93 (8th Cir. 2006); *but cf. United States v. Henderson*, 231 Fed. App'x 531, 532 (8th Cir. 2007) (holding that tampering by operation is a crime of violence), *vacated*, 2008 WL 1775013 (U.S. Apr. 21, 2008) (remanding for further consideration in light of *Begay v. United States*, 128 S. Ct. 1581 (2008)). Davidson does not dispute that his offense of tampering by operation was a crime of violence; he contends only that there was insufficient evidence to show that he was the driver of the stolen vehicle. The district court did not clearly err in determining that Davidson was the driver. The circumstantial evidence of Davidson's whereabouts in relation to footprints leading from the stolen vehicle, together with his flight from law enforcement officers, was bolstered at trial by evidence that the footprints in the snow leading away from the vehicle matched the pattern on the soles on Davidson's boots. This evidence is sufficient to support the district court's finding.

Finally, Davidson argues that the district court erred in finding that his three previous convictions were committed on "occasions different from one another," as required for the sentence enhancement under § 924(e). Davidson argues that his prior convictions for attempted domestic assault and resisting arrest by fleeing were committed on the same occasion. The facts surrounding the commission of these offenses are not disputed, and we review *de novo* the district court's determination that a prior conviction is a qualifying "violent felony." *United States v. Mason*, 440 F.3d 1056, 1057 (8th Cir. 2006). We may consider both the offenses of conviction and the underlying facts to determine whether the offenses were committed on different occasions. *United States v. Boyles*, 235 F.3d 1057, 1057 (8th Cir. 2000) (per curiam).

On December 15, 2002, Davidson assaulted his girlfriend, Tricia Files, in a bar by pulling her hair and hitting her in the head with a cell phone. (PSR ¶ 39). Files then entered Davidson's car, and Davidson continued to assault her as he drove. A deputy sheriff effected a traffic stop on Davidson's vehicle; the record does not reflect the reason for the stop. While the officer spoke to Davidson, Files screamed that Davidson had assaulted her. (*Id.* at ¶ 38). The officer asked Files to get out of the vehicle, but Davidson sped away with Files in the car. Officers followed in a chase that reached speeds of over 100 miles-per-hour until Davidson was apprehended through the use of tire deflation devices.

We must determine whether, under those circumstances, Davidson committed the offenses of attempted domestic assault and resisting arrest on "occasions different from one another." 18 U.S.C. § 924(e). The statutory provision at issue has its genesis in a decision of this court. In *United States v. Petty*, 798 F.2d 1157 (8th Cir. 1986), *vacated*, 481 U.S. 1034 (1987), this court held that a defendant was subject to an enhanced sentence under 18 U.S.C. § 1202(a)(1) (Supp. 1984), based on "three previous convictions . . . for robbery or burglary," when he was "convicted in a single indictment of six counts of robbery stemming from an incident during which he

robbed six different people in a restaurant simultaneously." 798 F.2d at 1159. When Petty petitioned for a writ of certiorari, the Solicitor General confessed error, noting that "the legislative history strongly supports the conclusion that the statute was intended to reach multiple criminal episodes that were distinct in time, not multiple felony convictions arising out of a single criminal episode." *See United States v. Petty*, 828 F.2d 2, 3 (8th Cir. 1987). The Supreme Court remanded the case to this court for reconsideration in light of the Solicitor General's position, *Petty*, 481 U.S. at 1034-35, and this court remanded the case for resentencing. 828 F.2d at 3.

The following year, Congress amended the statute to add the requirement that a defendant must have sustained three convictions "on occasions different from one another" to qualify as an armed career criminal. Senator Biden, then the chair of the Senate Judiciary Committee, explained his view that "a single multicount conviction could still qualify where the counts related to crimes committed on different occasions, but a robbery of multiple victims simultaneously (as in *Petty*) would count as only one conviction." 134 Cong. Rec. S17360-02 (Nov. 10, 1988). Observing that "occasion" has been defined as "a particular occurrence" or "a particular time at which something takes place," the Fourth Circuit interpreted the amendment to mean that "Congress intended to include within the scope of the ACCA only those predicate offenses that can be isolated with a beginning and an end – ones that constitute an occurrence unto themselves." *United States v. Letterlough*, 63 F.3d 332, 335 (4th Cir. 1995) (quoting *Webster's Third New International Dictionary Unabridged* 1560 (1986)).

In our previous decisions on this subject, we have said that offenses occur on different occasions if they are "separate and distinct criminal episodes that did not result from a continuous course of conduct." *United States v. Hamell*, 3 F.3d 1187, 1191 (8th Cir. 1993); *see also United States v. Deroo*, 304 F.3d 824, 828 (8th Cir. 2002). In *Hamell*, we held that two assaults were distinct criminal episodes where the defendant stabbed one victim with a knife inside a tavern, and stabbed another victim

twenty-five minutes later, after the second victim called the police and approached the defendant's girlfriend. 3 F.3d at 1191. We noted that "the assaults happened at different times and places and had different motivations." *Id.* In *Deroo*, we held that three burglaries on one night were distinct criminal episodes, where the defendant burglarized three cabins with different owners on different lakes. 304 F.3d at 828. We observed that the burglaries occurred in three separate places and involved three separate victims. *Id.* In *Mason*, we held that drug sales made to the same undercover officer on different dates were offenses committed on occasions different from one another. 440 F.3d at 1057-58.

Davidson's case presents a scenario that has arisen in other circuits with varying fact patterns and varying results. The general problem is whether to treat as separate occasions or separate episodes (1) the commission of an offense designed to elude apprehension for an underlying offense (e.g., assaulting a police officer or resisting arrest) and (2) the commission of the underlying offense. This situation may arise when a police officer confronts the defendant while the underlying offense is in progress, shortly after the underlying offense has been completed, or at a later time, during a subsequent investigation of the underlying offense.

Other circuits have struggled with this problem, reaching arguably inconsistent results with respect to similar scenarios. The earliest opinion in this category seems to be *United States v. Schieman*, 894 F.2d 909, 910 (7th Cir. 1990), where the defendant burglarized a store and then walked three blocks to a phone booth to arrange transportation. A police officer approached the defendant at the phone booth shortly after the burglary, and the defendant assaulted the officer. *Id.* A divided panel held that the burglary and the assault were committed on occasions different from one another, reasoning that "[o]nce the original crime is complete, there is no principled way to distinguish between an attack in response to an investigation commenced within ten minutes of the burglary and an attack in response to an investigation commenced a day after the burglary." *Id.* at 913. A dissenting judge argued that the

offenses were committed on the same occasion, because the assault was "closely connected in time, place, and continuity of action" to the underlying offense. *Id.* at 915 (Ripple, J., dissenting) (internal quotation and citation omitted).

Since *Schieman*, at least three other circuits have addressed situations where the defendant was confronted shortly after completing the underlying offense, and then committed a second offense against the confronting party. In *United States v. Ressler*, 54 F.3d 257, 260 (5th Cir. 1995), the Fifth Circuit considered a defendant who burglarized a home, fled when the homeowner discovered the burglary in progress, and then stabbed a neighbor who pursued the defendant and caught him after eight to twelve minutes. The court held that the housebreaking and the assault were committed on occasions different from one another, because the crimes were "'committed sequentially, against different victims, at different times, and at different locations.'" *Id.* (quoting *United States v. Hudspeth*, 42 F.3d 1015, 1022 (7th Cir. 1994) (en banc)).

The Sixth Circuit reached a different conclusion in the case of a defendant who burglarized a home, encountered police officers as he walked out of a wooded area near the home, fled into the woods, and pointed a gun at a police officer who pursued him. *United States v. Graves*, 60 F.3d 1183, 1184-85 (6th Cir. 1995). The defendant was convicted of burglary and assault, and the Sixth Circuit held that the offenses were not committed on occasions different from one another. *Id.* at 1187. The court observed that the defendant was still at the location of the burglary when he was chased by the police and then pointed a gun at an officer. *Id.* The court distinguished the situation in *Schieman*, where the defendant assaulted an officer at a phone booth three blocks away from the burglary, and concluded that *Graves* was more analogous to *Petty*, where the defendant simultaneously robbed multiple victims. *Id.*[3]

---

[3]*Graves* also relied on the decision in *United States v. Sweeting*, 933 F.2d 962 (11th Cir. 1991), which involved a defendant who burglarized one home, fled to another home when the police approached, and hid in a closet to escape detection by

The Fourth Circuit then reached the opposite conclusion in a case that appears materially indistinguishable from *Graves*. In *United States v. Leeson*, 453 F.3d 631, 639-40 (4th Cir. 2006), the defendant robbed a food store, and when he exited the store, a police officer confronted the defendant and ordered him to stop. The defendant raised a shotgun and fired at the officer. *Id.* at 640. He eventually was convicted of robbery and attempted murder of the police officer. *Id.* at 639. The Fourth Circuit held that two offenses were committed on occasions different from one another, because they involved distinctly different victims and distinctly different crimes, and because the defendant was presented with a clear opportunity to cease and desist his criminal behavior before the second crime. *Id.* at 641-42. The court acknowledged the decision in *Graves*, but simply disagreed with it. *Id.* at 643 n.5.

Considering these decisions and the record in this case, we agree with the district court that Davidson committed the offenses of attempted domestic assault and resisting arrest by fleeing on occasions different from one another. The record shows that when the deputy sheriff stopped Davidson's vehicle for unspecified reasons, Davidson's attempted assault on his girlfriend was completed. The first criminal episode had concluded, and the traffic stop represented a discernible pause in activity during which Davidson had an opportunity to cease and desist from further criminal

_____

the police. *Id*. at 967. The Eleventh Circuit reversed the district court's classification of Sweeting as an armed career criminal, saying that "this should count as only one conviction for purposes of sentencing, as it constitutes a single episode even though there were separate punishable acts." *Id*. The opinion did not specify, however, that Sweeting sustained three separate convictions under state law for the series of punishable acts, or what separate offenses may have been committed. Elsewhere, the court stated that Sweeting's "*one prior adult conviction* in 1986 reflected several counts which all arose from the same incident," and that Sweeting asserted "that he was *convicted only once* and not several times for the same offense." *Id*. (emphases added). Whether Sweeting sustained three separate convictions is therefore unclear, but the Eleventh Circuit did indicate that it would not treat three offenses arising from this scenario as committed on occasions different from one another for purposes of § 924(e).

activity. But when his girlfriend reported Davidson's assault, Davidson elected to resist arrest and flee the scene. The pause between the two offenses was brief, but crimes committed in rapid succession are still committed on different occasions when they "reflect distinct aggressions." *United States v. Godinez*, 998 F.2d 471, 472-73 (7th Cir. 1993). Davidson's attempted assault of his girlfriend and his reckless flight while resisting arrest were distinct criminal episodes reflecting distinct aggressions. His offense of resisting arrest by fleeing also was committed at locations different from where he attempted to assault his girlfriend, and it involved distinctly different victims, beyond even those investigating the underlying assault – namely, members of the public endangered by the high-speed flight from police. We do not view these offenses as part of a continuous course of conduct like the simultaneous robbery of six persons in a restaurant in *Petty*. And the moment of relative calm presented by the deputy sheriff's traffic stop of Davidson strikes us as a point of demarcation between episodes that was not present in either *Graves* or *Leeson*, two cases that have spawned a disagreement among our sister circuits. We therefore conclude that these two violent felonies were properly counted as separate prior convictions for purposes of the sentencing enhancement provision in § 924(e).

\* \* \*

For the foregoing reasons, the judgment of the district court is affirmed.

_____

-11-