# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3812

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Lafayette Deandre Van, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: June 12, 2008
Filed: October 3, 2008

_____

Before LOKEN, Chief Judge, COLLOTON, Circuit Judge, and PIERSOL,[*] District
Judge.

_____

LOKEN, Chief Judge.

A jury convicted Lafayette Deandre Van of being a felon in possession of a
firearm, violating 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Van appeals, arguing that
the evidence was insufficient to convict and the district court[1] erred in treating Van's
three prior drug convictions as separate offenses, triggering a mandatory minimum

_____

[*]The HONORABLE LAWRENCE L. PIERSOL, United States District Judge
for the District of South Dakota, sitting by designation.

[1]The HONORABLE MICHAEL J. DAVIS, Chief Judge of the United States
District Court for the District of Minnesota.

sentence under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), and an enhanced sentencing range under the advisory sentencing guidelines. We affirm.

## I. Sufficiency of the Evidence

We review the sufficiency of the evidence *de novo*, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict. United States v. Piwowar, 492 F.3d 953, 955 (8th Cir. 2007). We may reverse only if we conclude that no reasonable jury could have found the defendant guilty beyond a reasonable doubt. United States v. Guenther, 470 F.3d 745, 747 (8th Cir. 2006). To convict Van of violating § 922(g)(1), the government must prove that he had a prior felony conviction and knowingly possessed a firearm that had been in or had affected interstate commerce. Id. As the parties stipulated that Van had a prior felony conviction and the handgun in question had moved in interstate commerce, the issue at trial was whether Van knowingly possessed the firearm.

At trial, St. Paul Police Department dispatcher Theresa Reilly testified that she received nine 911 calls the evening of November 28, 2006, reporting multiple gunshots and then a man running away from a car near Fourth and Mendota streets. Police officers were promptly dispatched to the area. Christopher Braun testified that he and his sister-in-law, Arielle Sordine, were outside the front entry of the nearby seven-unit apartment building where Van lived with his girlfriend. Van ran to the front entry, pushed Braun aside, and entered the building. Both Braun and his wife, Jontue, who came to the front entry when she heard the shots, testified they were "sure" Van had a gun in his hand when he entered the building. The Brauns returned to their apartment, and Christopher called 911. An audiotape of the call confirmed that Braun reported he heard gunshots fired outside his apartment building and then saw a man carrying a gun enter the building. Christopher and Jontue Braun testified that no one else entered the building.

After entering the building, Van ran upstairs. He sought entry to the upstairs apartment of Mary Olson, but she refused to open the door. Olson testified she saw Van through the peephole but did not see a gun. Van then knocked on the door of Paul Barthol's apartment. Barthol, who admitted he is schizophrenic and takes anti-psychotic medications, testified that he allowed Van to enter to call the police. According to Barthol, Van walked towards Barthol's bedroom and quickly returned to the living room, telling Barthol he had a gun and put it "back there," gesturing toward the bedroom. Barthol testified he did not see Van with the gun.

The police arrived at Barthol's apartment minutes later. Van opened the door and said Barthol lived there. When asked how long he had been in the apartment, Van replied, "about three hours." Officer Edward O'Donnell testified that, after Barthol gave permission to enter the apartment, O'Donnell had Van come out in the hallway and wait with other officers, who handcuffed Van and took him to a squad car as a suspect while the investigation continued.

O'Donnell entered the apartment, and Barthol consented to a search for a pistol. O'Donnell found a .380 pistol in Barthol's bedroom when it fell to the floor from beneath Barthol's pillow. After the police conducted a show-up at which the Brauns and Sordine identified Van as the man they had seen with a gun, Van was arrested. Arresting Officer Mark Ross testified that, when told he was arrested for being a felon in possession of a firearm, Van denied having a gun and said, "You mean to tell me I'm going to jail because that old white boy had a gun in his apartment?" At the Law Enforcement Center, police performed a gunshot residue test which revealed eight microscopic residue particles on Van's right hand, some evidence that he may have discharged a firearm or handled a discharged firearm. Barthol testified that he did not own a gun, keep a gun in the apartment, or place the gun under his pillow.

Noting inconsistencies in Christopher Braun's testimony and Barthol's schizophrenic condition, Van argues that a reasonable jury must find that he did not

possess the pistol because "a man caught in the middle of a firefight would not have bothered to bring along an empty gun when he was running for his life." However, the argument conflicts with the testimony of two witnesses who saw Van possessing the handgun, Chris and Jontue Braun, and a third witness, Paul Barthol, who testified that Van admitted putting the gun where it was later found. This testimony, if credited by the jury, was sufficient to convict Van of the felon in possession charge. United States v. Brown, 422 F.3d 689 (8th Cir. 2005). As we have repeatedly stated, "witness credibility is virtually unreviewable on appeal because it is preeminently the job of the finder of fact." United States v. Beaman, 361 F.3d 1061, 1064 (8th Cir. 2004) (quotation omitted). Moreover, Van's lie to the police about how long he was in Barthol's apartment, his post-arrest statement, and the gunshot residue on his hand were additional evidence supporting the jury's verdict convicting Van of violating § 922(g)(1).

## II. The Sentencing Issue

The ACCA imposes a mandatory minimum fifteen-year prison sentence if the defendant violates § 922(g)(1) "and has three previous convictions . . . for a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). Van's Presentence Investigation Report recommended that Van's sentence be enhanced pursuant to the ACCA because of a prior robbery and three prior drug convictions. The district court agreed, which resulted in an advisory guidelines sentencing range of 235-293 months in prison. The court sentenced Van to 213 months in prison. Van argues the court erred in applying the ACCA because his prior drug convictions were part of "one criminal episode" and therefore should count as "only one predicate offense." We review *de novo* whether a prior conviction is a predicate offense under the ACCA. United States v. Mason, 440 F.3d 1056, 1057 (8th Cir. 2006).

Van concedes that his robbery conviction was a predicate violent felony offense under the ACCA. Thus, the issue is whether his three drug convictions count as at

least two predicate serious drug offenses. The convictions resulted from three sales of crack cocaine to a police informant during a twenty-six day undercover operation in July and August 2002. On August 15, Van sold 0.4 grams of crack to a police informant. On August 22, Van drove a blue Ford while Donald Tate sold 0.67 and, thirty minutes later, 1.24 grams of crack to the same police informant in a restaurant parking lot. Van pleaded guilty in state court to three drug felony counts and a felony racketeering count.

Predicate offenses under the ACCA are limited to those "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Each distinct criminal episode is a separate predicate offense, regardless of the date of conviction or the number of trials or pleas. Mason, 440 F.3d at 1057-58. We have repeatedly held that convictions for separate drug transactions on separate days are multiple ACCA predicate offenses, even if the transactions were sales to the same victim or informant. Id. at 1058 and cases cited. In United States v. Speakman, 330 F.3d 1080, 1082 (8th Cir. 2003), for example, we concluded that sales to the same undercover officer at four different locations on seven different dates were separate predicate offenses. In United States v. Long, 320 F.3d 795, 802 (8th Cir. 2003), we concluded that three drug deliveries on three separate days were separate offenses. And in United States v. McDile, 914 F.2d 1059, 1061 (8th Cir. 1990), cert. denied, 498 U.S. 1100 (1991), we concluded that four drug sales to two undercover officers in an eight-day period were separate offenses. Based on these cases, the district court was clearly correct in finding that Van's convictions for crack sales on August 15 and August 22 were distinct criminal episodes. These two serious drug offenses plus the prior robbery conviction provide the three predicate offenses the ACCA requires. Thus, we need not consider whether the two sales on August 22 should be counted as one or two predicate offenses.

Van argues that this case is distinguishable because he also pleaded guilty to a charge of racketeering, which required proof that the three drug transactions were part

of a pattern of illegal activity.  He argues by analogy that if his case were charged as a conspiracy with multiple drug sales, there would be "no doubt that it constituted one criminal episode."  We have squarely rejected that argument in determining whether two prior drug convictions were separate criminal episodes for purposes of the sentencing enhancement in 21 U.S.C. § 851.  See United States v. Johnston, 220 F.3d 857, 861-62 (8th Cir. 2000).  Van's further contention that his sentence is somehow a form of improper sentencing manipulation is without merit.  See United States v. Shephard, 4 F.3d 647, 649 (8th Cir. 1993), cert. denied, 510 U.S. 1203 (1994).

The judgment of the district court is affirmed.

_____