# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3792

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Michael Willoughby, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 13, 2011
Filed: September 6, 2011

_____

Before RILEY, Chief Judge, SMITH, Circuit Judge, and STROM,[1] District Judge.

_____

SMITH, Circuit Judge.

Michael Willoughby pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Over Willoughby's objection, the presentence investigation report (PSR) recommended that Willoughby be designated an "armed career criminal" under the Armed Career Criminals Act (ACCA), 18 U.S.C. § 924(e)(1), based, in part, on his two prior Missouri convictions stemming from an incident in which he sold drugs to two individuals nearly simultaneously. Willoughby maintained that these two convictions were for offenses not sufficiently separate and

_____

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

distinct to render them committed "on occasions different from one another" as the ACCA requires. The district court agreed with the PSR's recommendation, designated Willoughby an armed career criminal, and sentenced him to the ACCA's mandatory minimum sentence of 15 years' imprisonment. Willoughby appeals, and, for the reasons that follow, we reverse and remand for resentencing.

I. *Background*

On June 22, 2010, a federal grand jury in Springfield, Missouri, returned a one-count indictment charging Willoughby with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Initially, Willoughby pleaded not guilty to the indictment, but he subsequently changed his plea to guilty.

The PSR prepared in advance of his sentencing recommended that Willoughby be classified as an armed career criminal, pursuant to the ACCA. If designated an armed career criminal, Willoughby would be subject to a mandatory minimum punishment of 15 years' imprisonment. Willoughby objected to this finding by the PSR, specifically challenging whether his selling marijuana to two different people during one drug deal constituted two offenses that were committed on different occasions as the ACCA requires.

In their respective briefs, both the government and Willoughby recite the charging information filed in Greene County, Missouri Circuit Court and Officer Robert C. McPhail's accompanying "Affidavit in Support of Complaint" as accurate sources for the underlying facts. Officer McPhail's affidavit describes the drug deal, in pertinent part, as follows:

> On 1-20-99[,] I was contacted by a C/I [(confidential informant)] who is registered with the Springfield Police Department Narcotics unit as a confidential informant. The C/I said a subject known as "Beast" had marijuana and he was willing to sell to him/her. The C/I said he could introduce me to "Beast" and I could by [sic] marijuana from him. . . .

Before contacting the C/I[,] I photocopied $75 of funds issued to me by the police department . . . . I prepared and wore a hidden body wire for the transaction. Officer Kirk Manlove took the receiver with a cassette tape in his city[-]issued vehicle and monitored the transaction. Officer Brandon Bridgeforth assisted and went with Officer Manlove.

I contacted the C/I and checked to make sure he/she had no money, illegal drugs[,] or contraband in his/her possession. We rode in my city[-]issued vehicle to 221 N. Broadway. Before entering the house[,] I gave the C/I $25 of the $75 that I photocopied.

The C/I knocked on the door and received permission for us to enter the house. Michael Willoughby was sitting in a chair in the northeast corner of the living room. He was wearing a shoulder holster. The straps that hold the holster on the body wore [sic] green. The holster was camouflage. The holster held what appeared to be a semiautomatic handgun. It was black in color and I saw a magazine in the butt of the handgrip. Willoughby was wearing a tan/off white t-shirt and blue jeans. He was also wearing red suspenders hanging down by his legs. These are commonly referred to as ["]braces["] by Neonazi/skinhead groups.

Willoughby asked the C/I what was up. The C/I asked Willoughby if he still did business. Willoughby said yes. The C/I said he wanted to purchase an "eighth" and I wanted to purchase a "quarter." Willoughby picked up a plastic box from the left side of the chair and walked to a room in the back of the house . . . . The C/I and I waited in the living room for a few minutes until Willoughby returned.

When Willoughby returned to the living room he had two sandwich bags containing a green leafy substance in his hand. He started to give both to the C/I. I held out my left hand. Willoughby gave one to the C/I then gave one to me. The C/I gave Willoughby the $25 I gave him. I gave Willoughby $50. I smelled the contents of the bag Willoughby gave me. It smelled and looked like marijuana. We immediately left the house. Willoughby wore the shoulder holster with [the] gun during the entire transaction.

After leaving the house the C/I gave me the sandwich bag of green leafy substance. I checked him/her again for any contraband before he/she left my city issued vehicle.

Subsequently, the State of Missouri charged Willoughby in a two-count information, one count for Willoughby's sale to the confidential informant and one count for Willoughby's sale to Officer McPhail. A jury convicted Willoughby on each count. In turn, based on these undisputed facts, the district court designated Willoughby an armed career criminal under the ACCA and sentenced him accordingly to the ACCA's mandatory minimum sentence of 15 years' imprisonment.

## II. *Discussion*

On appeal, Willoughby maintains that the district court erred in counting, for ACCA purposes, his sale of marijuana to Officer McPhail and the confidential informant as two drug offenses committed on different occasions. In response, the government argues that the district court properly labeled Willoughby an armed career criminal subject to the ACCA's mandatory minimum sentence of 15 years' imprisonment. Specifically, the government contends that "there were two different amounts of marijuana sold to two separate purchasers, which resulted in Willoughby being charged with two different crimes." The government asserts that "[t]his Court has repeatedly rejected arguments similar to Willoughby's, finding them to have 'no merit, for it is the criminal episodes underlying the convictions . . . that must be distinct to trigger the provisions of the ACCA.'" (Quoting *United States v. Speakman*, 330 F.3d 1080, 1082 (8th Cir. 2003).)

We review de novo the district court's determination of whether Willoughby's criminal record qualified him as an Armed Career Criminal. *United States v. Gordon*, 557 F.3d 623, 624 (8th Cir. 2009). As we have explained,

Congress passed the ACCA to protect the public from continuing crimes by armed felons. *See generally* H.R. Rep. No. 98-1073, at 1–3, 1984

U.S.C.C.A.N. 3661 (1984). It provides a minimum sentence of fifteen years if a defendant qualifies as an armed career criminal. 18 U.S.C. § 924(e). This classification applies to a defendant convicted of being a felon in possession of a weapon or ammunition who has "three previous convictions by any court . . . for a violent felony or a serious drug offense, or both, *committed on occasions different from one another*." § 924(e)(1).

*United States v. Deroo*, 304 F.3d 824, 828 (8th Cir. 2002) (emphasis added). As the government alludes to in its brief, "[t]o qualify as predicate offenses under the statute, each conviction must be a separate and distinct criminal episode, rather than part of a continuous course of conduct." *Id.* (citing *United States v. Hamell*, 3 F.3d 1187, 1191 (8th Cir. 1993)).

Here, the record belies the government's argument that Willoughby's sale to the officer and, seconds later, to the confidential informant, constitute "separate and distinct criminal episodes" but instead confirms that the sale was, in actuality, one "continuous course of conduct." *Id.* As an initial matter, we recognize "that the status of the law in the [Eighth] [C]ircuit is that a single charging document containing separate underlying counts may serve as the basis for separate convictions when considering whether the offenses constitute serious drug offenses for purposes of armed career offender consideration." *United States v. Keith*, 638 F.3d 851, 853 (8th Cir. 2011) (quotations omitted). Relatedly, "criminal episodes underlying convictions trigger application of the ACCA, not the date of the convictions or the number of trials or pleas resulting in those convictions." *United States v. Ross*, 569 F.3d 821, 823 (8th Cir. 2009) (internal quotations and citation omitted). Moreover, "[w]e have repeatedly held that convictions for separate drug transactions *on separate days* are multiple ACCA predicate offenses, even if the transactions were sales to the same victim or informant." *United States v. Van*, 543 F.3d 963, 966 (8th Cir. 2008) (emphasis added).

However, we have never held two convictions to be sufficiently separate and distinct to serve as predicate ACCA convictions where, as here, those convictions were for drug offenses that the defendant committed, in essence, simultaneously. Indeed, in *Van*, perhaps our most factually similar case to Willoughby's, we declined to consider whether two drug sales consummated thirty minutes apart from each other "should be counted as one or two predicate offenses," opting instead to affirm the district court's ACCA enhancement by relying on the defendant's three remaining convictions that were clearly separate and distinct from each other. 543 F.3d at 966; *accord United States v. Tate*, 633 F.3d 624, 632 n.5 (8th Cir. 2011) (noting that the *Van* court "did not decide whether Van's two convictions for selling crack cocaine on August 22, 2002[,] were distinct predicate offenses" where "[t]hese underlying sales occurred one-half hour apart"). At most, our precedents have found sufficient separateness and distinctness between predicate convictions for substantially simultaneous "violent felonies," e.g., burglaries or assaults, because the nature of the crimes enabled us to assess their separateness and distinctness based, not just on temporal grounds, but additionally on whether they involved different victims or "aggressions." *See, e.g.*, *United States v. Davidson* (*Davidson I*), 527 F.3d 703, 710 (8th Cir.), ("The pause between the two offenses [of attempted domestic assault and fleeing from apprehension for the assault] was brief, but crimes committed in rapid succession are still committed on different occasions when they 'reflect distinct aggressions.'" (quoting *United States v. Godinez*, 998 F.2d 471, 472–73 (7th Cir. 1993))), *partially vacated on other grounds by* 551 F.3d 807 (8th Cir. 2008) (per curiam).[2]

[2]Although we partially vacated the *Davidson I* opinion in light of the Supreme Court's decision in *Begay v. United States*, 553 U.S. 137 (2008), we expressly clarified that,

> [f]or the reasons set forth in our prior opinion, Davidson's conviction is affirmed, and we uphold the district court's decision to classify Davidson as an armed career criminal pursuant to 18 U.S.C. § 924(e). The prior opinion is vacated only to the extent that it affirmed the district court's

Our court has considered at least three factors as important considerations in deciding whether offenses are sufficiently separate and distinct to serve as individual predicate convictions for ACCA enhancement: (1) the time lapse between offenses, (2) the physical distance between their occurrence, and (3) their lack of overall substantive continuity, a factor that is often demonstrated in the violent-felony context by different victims or different aggressions. For instance, in *United States v. Daniels*, we concluded that the prior burglaries "occurred on different occasions," as required by the ACCA, based on the "record show[ing] that Daniels' prior burglaries spanned a one-year period, occurred on different dates, related to different victims, and were committed at different locations." 625 F.3d 529, 533 (8th Cir. 2010). Similarly, in *Hamell*, we concluded that two offenses were sufficiently separate and distinct where the defendant "first stabbed one victim with a knife inside a tavern after an argument," and, "[a]bout twenty-five minutes later outside the tavern, . . . shot at a different victim who had called the police and was approaching [the defendant's] girlfriend." 3 F.3d at 1191. In reaching this conclusion in *Hamell*, we acknowledged that the defendant "committed the two assaults within minutes of each other" but reasoned nonetheless that "[t]hese assaults happened at different times and places and had different motivations." *Id.* Finally, in *United States v. Hibbler*, we concluded that the defendant's "September 2003 convictions for arson and terroristic threats . . . qualify as separate offenses" because the defendant "committed the offenses four days apart, at different locations, and they involved different victims." 295 F. App'x 106, 107 (8th Cir. 2008) (unpublished per curiam).

We conclude that the district court erred in concluding that Willoughby consummated two separate drug deals for ACCA purposes. With respect to the time

judgment in its entirety; the opinion remains in place with respect to all issues raised and decided therein.

*United States v. Davidson* (*Davidson II*), 551 F.3d 807, 808 (8th Cir. 2008) (per curiam).

lapse between the drug deals, this court has stated that "[s]ection 924(e) does not require separate prosecutions; *it is sufficient that the offenses occurred at different times*." *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994) (per curiam) (emphasis added) (citing *United States v. Gibson*, 928 F.2d 250, 254 (8th Cir. 1991); *United States v. McDile*, 914 F.2d 1059, 1061 (8th Cir. 1990)). Accordingly, under our case law, to prove that two offenses are sufficiently separate and distinct for ACCA purposes, it is *sufficient* (although, not necessary) to show that some time elapsed between the two prospective predicate offenses. *Id.* Indeed, the ACCA seems to prioritize time lapse given that its plain language stipulates that the predicate offenses be "committed on *occasions different from one another*." 18 U.S.C. § 924(e)(1) (emphasis added). As we explained in *Davidson I*,

> [t]he statutory provision at issue has its genesis in a decision of this court. In *United States v. Petty*, 798 F.2d 1157 (8th Cir. 1986), *vacated*, 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810 (1987), this court held that a defendant was subject to an enhanced sentence under 18 U.S.C. § 1202(a)(1) (Supp.1984), based on "three previous convictions . . . for robbery or burglary," when he was "convicted in a single indictment of six counts of robbery stemming from an indictment during which he robbed six different people in a restaurant simultaneously." 798 F.2d at 1159. When Petty petitioned for a writ of certiorari, the Solicitor General confessed error, noting that the "legislative history strongly supports the conclusion that the statute was intended to reach multiple criminal episodes that were distinct in time, not multiple felony convictions arising out of a single criminal episode." *See United States v. Petty*, 828 F.2d 2, 3 (8th Cir. 1987). The Supreme Court remanded the case to this court for reconsideration in light of the Solicitor General's position, *Petty*, 481 U.S. at 1034–35, 107 S.Ct. 1968, and this court remanded the case for resentencing. 828 F.2d at 3.
>
> The following year, Congress amended the statute to add the requirement that a defendant must have sustained three convictions "on occasions different from one another" to qualify as an armed career criminal. . . . Observing that "occasion" has been defined as "a particular

occurrence" or "a particular time at which something takes place," the Fourth Circuit interpreted the amendment to mean that "Congress intended to include within the scope of the ACCA only those predicate offenses that can be isolated with a beginning and end—ones that constitute an occurrence unto themselves." *United States v. Letterlough*, 63 F.3d 332, 335 (4th Cir. 1995) (quoting *Webster's Third New International Dictionary Unabridged* 1560 (1986)).

*Davidson I*, 527 F.3d at 707–08. Thus, both the ACCA's plain language and its legislative history, as construed by this court in *Davidson I*, make clear that predicate ACCA offenses are separate and distinct when they are temporally remote to one another. In other words, if a sentencing court determines that sufficient time lapses between the offenses, then it is highly likely that the defendant committed them "on occasions different from one another." 18 U.S.C. § 924(e)(1).

That said, other of our precedents recognize the difficulties inherent in gauging—with the traditional metrics of minutes and hours—the amount of time lapse sufficient to render the offenses committed "on occasions different from one another." Accordingly, we have also stated that "[c]rimes occurring even minutes apart can qualify . . . if they have different victims," thereby reflecting a lack of substantive continuity, "and are committed in different locations," *Deroo*, 304 F.3d at 828 (citing, *inter alia*, *Hamell*, 3 F.3d at 1191), thereby reflecting physical distance, *United States v. Wright*, 356 F. App'x 886, 887 (8th Cir. 2009) (unpublished per curiam) (concluding that two robberies were "separate and distinct criminal episodes" where the defendant "drove between the two robberies" and "[t]he two victims were unrelated," rendering the case "virtually indistinguishable from *Deroo*"). *Accord United States v. McCaul*, 249 F. App'x 482, 482 (8th Cir. 2007) (unpublished per curiam) (citing *Deroo*, 304 F.3d at 828, and finding no plain error in the district court's treatment of three robberies committed on the same day as separate and distinct criminal episodes). Indeed, as already noted, the *Davidson I* court ultimately held, with respect to violent felonies, that "[t]he pause between the two offenses was brief,

but crimes committed in rapid succession are still committed on different occasions when they 'reflect distinct aggressions.'" 527 F.3d at 710.

In Willoughby's case, none of the factors that our precedents have identified countenance the conclusion that Willoughby's drug deals to Officer McPhail and the confidential informant were separate and distinct drug offenses perpetrated "on occasions different from one another." 18 U.S.C. § 924(e)(1). First, the two sales occurred within seconds, and there was no "discernible pause in activity during which [Willoughby] had an opportunity to cease and desist from further criminal activity." *Davidson I*, 527 F.3d at 710. According to the record evidence, Willoughby handed the marijuana to Officer McPhail and the confidential informant almost *simultaneously*, and thus the offenses were temporally proximate. Second, virtually no distance separated the two sales. *See Deroo*, 304 F.3d at 828. Officer McPhail and his confidential informant stood side-by-side. Moreover, there is nothing in this case resembling the "distinct aggressions" in *Davidson I* that would demonstrate a lack of substantive continuity between the two offenses. The government seizes on the facts that (1) Officer McPhail and the confidential informant were different individuals and (2) they purchased disparate amounts of marijuana. However, as to the first fact, we have observed that "[t]he ACCA speaks . . . to drug offenses committed on different 'occasions,' not to offenses committed with different individuals." *United States v. Mason*, 440 F.3d 1056, 1058 (8th Cir. 2006) (quoting 18 U.S.C. § 924(e)(1)). Finally, the insignificant disparity between the amounts of marijuana that Officer McPhail and the confidential informant purchased is insufficient to demonstrate a substantive discontinuity. At bottom, Willoughby's drug sales to Officer McPhail and the confidential informant each were "part of a continuous course of conduct" rather than the "separate and distinct criminal episodes" that the ACCA requires. *Deroo*, 304 F.3d at 828.

### III. *Conclusion*

Based on the foregoing, we reverse the district court's sentence and remand for resentencing consistent with this opinion.

_____