# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3454

_____

Merwyn L. Levering,

*Petitioner - Appellant*,

v.

United States of America,

*Respondent - Appellee*.

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: October 18, 2017
Filed: May 21, 2018

_____

Before LOKEN, MURPHY, and COLLOTON, Circuit Judges.[*]

_____

COLLOTON, Circuit Judge.

In 2004, a jury convicted Merwyn Levering of two firearms offenses: unlawful possession of a firearm as a previously convicted felon, and unlawful possession of

_____

[*]This opinion is filed by Judge Loken and Judge Colloton under Eighth Circuit Rule 47E.

a stolen firearm. Based on his criminal history, the district court[1] enhanced Levering's sentence pursuant to the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), and USSG § 4B1.4. The court later vacated Levering's sentence under 28 U.S.C. § 2255 in light of intervening precedent, but again applied the ACCA enhancement at a resentencing. Levering appeals the new sentence, and we affirm.

Following a three-day jury trial, Levering was found guilty of possession of a firearm as a previously convicted felon (Count I), *see* 18 U.S.C. §§ 922(g), 924(e), and possession of a stolen firearm (Count II), *see* 18 U.S.C. § 922(j). The ACCA establishes a mandatory minimum term of fifteen years' imprisonment and a maximum of life imprisonment if a defendant is convicted under § 922(g) and has sustained at least three previous convictions for a "violent felony . . . committed on occasions different from one another." 18 U.S.C. § 924(e)(1). At sentencing, the district court determined that Levering had sustained at least three such convictions so that he was subject to an enhanced statutory penalty under § 924(e) and an increased sentencing guideline range under USSG § 4B1.4(b)(3)(A). The court imposed concurrent sentences of 262 months on Count I (at the bottom of the advisory guideline range) and 120 months on Count II.

The district court vacated Levering's sentences in 2015 after the decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which declared unconstitutional the "residual clause" of § 924(e)(2)(B)(ii). 135 S. Ct. at 2563. In light of *Johnson*, the court concluded that one of Levering's prior convictions on which the court had relied at sentencing—a 2000 Nebraska conviction for escape from official detention—no longer qualified as a violent felony. At resentencing, however, the court determined that without considering the escape conviction, Levering was still an armed career criminal based on three other prior convictions: a 1989 Nebraska

---

[1]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

-2-

conviction for first-degree assault and two 1994 Iowa convictions for assault while participating in a felony. The court then varied downward from the advisory guideline range and sentenced Levering to 240 months on Count I and 120 months on Count II, to be served concurrently.

The principal dispute on appeal concerns whether the two Iowa assault convictions were for violent felonies "committed on occasions different from one another" within the meaning of the ACCA. The convictions arose from Levering's high-speed flight from law enforcement officers in a stolen automobile on June 13, 1994. On that date, Levering drove a vehicle through Polk, Dallas, and Adair counties in Iowa, weaved in and out of traffic, ran his vehicle into a pursuing police car, and forced other vehicles off the road. Levering was charged and convicted of assaults in all three counties. The district court concluded that the convictions from Dallas County and Adair County were for violent felonies that were committed on different occasions, and counted them both as predicate offenses for purposes of the ACCA.

Levering argues that the district court erred in making that determination. He contends that all of his assaults on June 13, 1994, occurred on a single "occasion" while he fled from law enforcement officers in a high-speed chase across three Iowa counties. We must determine, therefore, whether Levering committed the two Iowa assaults in Dallas County and Adair County on "occasions different from one another."

As we explained in *United States v. Davidson*, 527 F.3d 703 (8th Cir. 2008), *vacated in part on other grounds by* 551 F.3d 807 (8th Cir. 2008), and repeat here, the statutory provision at issue has its genesis in a decision of this court. *Id.* at 707-08. In *United States v. Petty*, 798 F.2d 1157 (8th Cir. 1986), *vacated*, 481 U.S. 1034 (1987), this court held that a defendant was subject to an enhanced sentence under 18 U.S.C. § 1202(a)(1) (Supp. 1984), based on "three previous convictions . . . for

robbery or burglary," when he was "convicted in a single indictment of six counts of robbery stemming from an incident during which he robbed six different people in a restaurant simultaneously." 798 F.2d at 1159-60. When Petty petitioned for a writ of certiorari, the Solicitor General confessed error, noting that "the legislative history strongly supports the conclusion that the statute was intended to reach multiple criminal episodes that were distinct in time, not multiple felony convictions arising out of a single criminal episode." *United States v. Petty*, 828 F.2d 2, 3 (8th Cir. 1987). The Supreme Court remanded the case to this court for reconsideration in light of the Solicitor General's position, *Petty*, 481 U.S. at 1034, and this court remanded the case for resentencing. *Petty*, 828 F.2d at 3.

The following year, Congress amended the statute to add the requirement that a defendant must have sustained three convictions "on occasions different from one another" to qualify as an armed career criminal. Senator Biden, then the chair of the Senate Judiciary Committee, explained his view that "a single multi-count conviction could still qualify where the counts related to crimes committed on different occasions, but a robbery of multiple victims simultaneously (as in Petty) would count as only one conviction." 134 Cong. Rec. S17360-02 (Nov. 10, 1988).

Since then, courts presented with multiple convictions for felonies committed on a single day have striven to determine what is a separate "occasion." We have said that offenses occur on different occasions if they are "separate and distinct criminal episodes that did not result from a continuous course of conduct." *United States v. Hamell*, 3 F.3d 1187, 1191 (8th Cir. 1993); *see also United States v. Deroo*, 304 F.3d 824, 828 (8th Cir. 2002). But this rephrasing raises more questions: What is an "episode," and what is a "continuous course of conduct?"

We know that the *Petty* situation—six robberies in a restaurant at the same time—is one episode, a continuous course of conduct, and a single "occasion." We have also concluded that two convictions for drug sales to two customers in the same

room seconds apart counted as only one prior conviction under the ACCA, because the offenses were "committed, in essence, simultaneously." *United States v. Willoughby*, 653 F.3d 738, 742 (8th Cir. 2011). But even when an offender sets out to commit multiple violent felonies on a single day, he can sustain more than one qualifying conviction. In *Deroo*, we held that three burglaries on one night were distinct occasions where the defendant burglarized three cabins with different owners on different lakes. 304 F.3d at 828. We observed that the burglaries occurred in three separate places and involved three separate victims. *Id. United States v. Gray*, 85 F.3d 380 (8th Cir. 1996), similarly held that burglaries of two homes located very close to each other within twenty-five minutes were committed on separate occasions. *Id*. at 381.

In *Hamell*, we held that two assaults were committed on different occasions where the defendant stabbed one victim with a knife inside a tavern, and shot at another victim twenty-five minutes later after that victim called the police and approached the defendant's girlfriend. 3 F.3d at 1191. We explained that the "assaults happened at different times and places and had different motivations." *Id. United States v. Humphrey*, 759 F.3d 909 (8th Cir. 2014), likewise concluded that a defendant's convictions for first-degree assault and first-degree robbery were separate predicate offenses where the two offenses were committed fifteen minutes and three blocks apart against different victims. *Id*. at 911-12. Synthesizing our decisions, the court in *Willoughby* observed that important considerations in the inquiry include "the time lapse between offenses," "the physical distance between their occurrence," and "their lack of overall substantive continuity, a factor that is often demonstrated in the violent-felony context by different victims or different aggressions." 653 F.3d at 743.

In Levering's case, the charging documents from the Iowa criminal cases establish that he committed the assaults in two different counties at different times against different victims. One assault occurred in Dallas County, "just west of the West Des Moines city limits," and the other in Adair County, "[a]s the vehicle

traveled west [on Interstate 80] in the eastbound lane." In Dallas County, Levering drove his vehicle into a car driven by a pursuing police officer and ran him off the road; in Adair County, Levering forced numerous vehicles, including semi-trucks, off the road.[2]

Levering acknowledges all of this, but he maintains that the two assaults should count as only one predicate offense because they were part of a "continuous course of conduct"—namely, his flight from police. Levering argues that his assaults, like the drug sales in *Willoughby*, were not "separate and distinct criminal episodes" because they shared the same motivation—evading arrest—and were committed without any intervening period of repose that might have provided Levering an opportunity to cease his criminal activity.

We reject Levering's argument as inconsistent with the thrust of our precedent. Although the phrase "continuous course of conduct" appears in our cases on this

---

[2]Several circuits have concluded that a sentencing court deciding the occasions-different question is limited to consulting judicial records of the type described in *Shepard v. United States*, 544 U.S. 13, 26 (2005). *See United States v. King*, 853 F.3d 267, 270-75 (6th Cir. 2017); *United States v. Dantzler*, 771 F.3d 137, 143-46 (2d Cir. 2014); *Kirkland v. United States*, 687 F.3d 878, 883-87 (7th Cir. 2012); *United States v. Sneed*, 600 F.3d 1326, 1330-33 (11th Cir. 2010); *United States v. Taylor*, 413 F.3d 1146, 1156-58 (10th Cir. 2005); *United States v. Thompson*, 421 F.3d 278, 281-86 (4th Cir. 2005). This court in *United States v. Boyles*, 235 F.3d 1057 (8th Cir. 2000) (per curiam), said that *Taylor v. United States*, 495 U.S. 575 (1990), did not limit the evidence that a sentencing court may consider, but *Boyles* relied on decisions from the Sixth and Seventh Circuits that were later abrogated by *Shepard*. 235 F.3d at 1057. We have not addressed the question directly in a published opinion since *Shepard*. *See United States v. Melbie*, 751 F.3d 586, 588 n.4 (8th Cir. 2014) (parties waived any objection); *United States v. Keith*, 638 F.3d 851, 853 (8th Cir. 2011) (*Shepard*-approved materials sufficient to resolve dispute). Limiting our review to the *Shepard* materials would not affect the outcome here, so we take the conservative approach by consulting only the charging documents and judgments.

subject, it has proved unhelpful to the analysis. A burglar on a one-night crime spree engages in a "continuous course of conduct," in the ordinary sense of the phrase, as he moves from home to home stealing property within a short period. Yet we have held that multiple burglaries within an hour as part of a single plan are committed on different occasions because they involve different times, locations, and victims. *Deroo*, 304 F.3d at 827-28; *Gray*, 85 F.3d at 381.

Levering is correct that a finding of "different motivations" for multiple offenses can support a determination of different occasions, *Hamell*, 3 F.3d at 1191, but a change in purpose is not a necessary condition. A serial burglar presumably acts with a single motivation to gather stolen property, but his multiple burglaries on a single night occur on different occasions. And while we have relied on "a discernable pause in activity" between offenses to support a determination of different occasions, *Davidson*, 527 F.3d at 710, the primary significance of the pause is the chance to discontinue criminal activity—an opportunity that is not present in the case of simultaneous offenses like the restaurant robbery in *Petty* or the dual drug sale in *Willoughby*. Levering's high-speed flight might not have facilitated calm reflection, but the length of the pursuit undoubtedly gave him an opportunity "to cease and desist from further criminal activity," *id.*, by discontinuing the chase or making a conscious choice to avoid assaulting other drivers whom he encountered on the road. *See United States v. Williams*, 187 F.3d 429, 431 (4th Cir. 1999).

We respectfully differ with the broad statement in two unpublished opinions from the Sixth Circuit that "[g]enerally when a person is evading or resisting arrest immediately following the actions giving rise to the arrest, subsequent offenses arising out of the evasion or resistance are part of the same criminal episode." *United States v. Clark*, 591 F. App'x 367, 376 (6th Cir. 2014); *see United States v. Mann*, 552 F. App'x 464, 470 (6th Cir. 2014). These nonprecedential decisions purported to derive the quoted proposition from *United States v. Graves*, 60 F.3d 1183 (6th Cir. 1995), *see Mann*, 552 F. App'x at 470, but they extended *Graves* in a significant way

without convincing explanation. *Graves* involved a burglary and an assault that was committed while resisting arrest for the burglary. The perpetrator "was still at the location of the burglary when he was chased by the police and pointed the gun at the officer." 60 F.3d at 1187. The common location for both offenses led the *Graves* court to find the situation "more closely analogous to *Petty* where the defendant simultaneously robbed multiple victims." *Id*. But *Graves* itself was rejected by the Fourth Circuit in *United States v. Leeson*, 453 F.3d 631, 643 n.5 (4th Cir. 2006), so *Clark* and *Mann* rise from a shaky foundation. And whatever the merit of *Graves* and its conclusion about offenses committed in a *single* location, its rationale does not dictate that all activity undertaken while resisting or evading arrest at different places and at different times occurs on a single "occasion."

Levering committed two assaults on the same date but at different times in different counties against different victims. We conclude that Levering's assaults in Dallas and Adair counties were "committed on occasions different from one another" and qualify as separate predicate offenses under § 924(e). The district court thus properly enhanced Levering's sentence under the ACCA and the corresponding sentencing guideline.

Levering also argues that the district court imposed a substantively unreasonable sentence under 18 U.S.C. § 3553(a). He contends that even if the court correctly determined that Levering was an armed career criminal, the court abused its discretion by giving too little weight to mitigating factors, such as Levering's age and supportive family. The district court, however, has wide latitude in deciding how to weigh the relevant factors under § 3553(a). In pronouncing Levering's sentence, the court stressed Levering's lengthy criminal history and disciplinary violations while in prison. The court observed that at the original sentencing, it "didn't appear that [Levering] had any intention to be a law-abiding, productive citizen." Ultimately, after recognizing that Levering had accepted responsibility and was "no longer in denial," the court varied downward from the advisory guideline range by 22 months

and imposed concurrent sentences of 240 months on Count I and 120 months on Count II. "[I]t is nearly inconceivable that the court abused its discretion in not varying downward still further." *United States v. Lazarski*, 560 F.3d 731, 733 (8th Cir. 2009). We conclude that there was no abuse of discretion.

The judgment of the district court is affirmed.

_____