# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3236

_____

United States of America

*Plaintiff - Appellee*

v.

Quentin Lamont Lavell Perry

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: June 12, 2018
Filed: November 15, 2018

_____

Before BENTON, KELLY, and STRAS, Circuit Judges.

_____

BENTON, Circuit Judge.

Quentin Lamont Lavell Perry appeals his conviction and 15-year sentence for possessing a gun and ammunition as a felon. *See* **18 U.S.C. § 922(g)(1)**. He argues that the police did not have probable cause to arrest him, that constraints on his ability to represent himself at trial violated his constitutional rights, and that he does not qualify for a heightened sentence under the Armed Career Criminal Act. With

jurisdiction under 28 U.S.C. § 1291, this court affirms the judgment of the district court.[1]

## I.

A 911 caller reported "shots fired" outside a bar. The caller described the shooter as a "taller" black man with a goatee, wearing a white shirt and dark pants. A few blocks from the bar, police officers saw Perry and another man crossing the street. Perry—the taller of the two—appeared to have a goatee and to be wearing a white shirt and dark pants. After briefly making eye contact with the police, the two men split up.

Perry walked between some buildings to a parking lot. The police circled around the block. They found him standing next to a car, on the passenger side. They could then see that although the back and sleeves of his shirt were white, the front was dark blue or black. They could also see he had a full beard that was longer around his chin, not a goatee. One officer went to talk to Perry. The other began checking the area for evidence. Through the windshield of the car Perry was standing next to, he saw a handgun and two magazines under the passenger seat. The officers handcuffed and arrested Perry. He was charged with possessing the handgun from the car and three bullets the police found in his pockets.

Perry argues the district court should have suppressed the bullets because the police did not have probable cause to arrest him, making the search of his pockets illegal. *See **Minnesota v. Dickerson***, 508 U.S. 366, 372–73 (1993). This court reviews legal conclusions de novo, and factual findings for clear error. *See, e.g.*, ***United States v. Gunnell***, 775 F.3d 1079, 1082–83 (8th Cir. 2015). "[P]robable cause

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

exist[s] at the time of [an] arrest when the available facts and circumstances are sufficient to warrant a person of reasonable caution to believe that an offense was being or had been committed by the person to be arrested." ***United States v. Adams***, 346 F.3d 1165, 1169 (8th Cir. 2003). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity"; it "is not a high bar." ***District of Columbia v. Wesby***, 138 S. Ct. 577, 586 (2018) (citations omitted).

Perry insists the police did not have probable cause because his appearance was "not that similar" to the 911 caller's description. The district court, adopting the magistrate judge's report and recommendation, did not clearly err in finding: "While there are some inconsistencies, [Perry] matched the material aspects of the shooter's description." Perry emphasizes his actual height is over six feet, while the 911 caller's estimate was "5′8″ to 5′9″." But the caller gave that specific measurement only in a follow-up interview *after* Perry had been arrested. At the time of the arrest, which controls the probable-cause inquiry, *see **Adams***, 346 F.3d at 1169, the only description to the police was that the shooter was "taller." That term aptly describes Perry. He is a taller black man, had a beard that was noticeably longer at his chin than on his cheeks, wore a shirt that looked white from the back, and had dark pants. Further, the police found him standing next to a car where a handgun and magazines were plainly visible, just a few blocks from where someone had reported "shots fired" minutes earlier. In the circumstances, a reasonable officer could have concluded that Perry was the shooter from the bar. *See **United States v. Oakley***, 153 F.3d 696, 697–98 (8th Cir. 1998); *see also **Wesby***, 138 S. Ct. at 588 (explaining that it is a mistake to assess probable cause "view[ing] each fact in isolation, rather than as a factor in the totality of the circumstances" (internal quotation marks and citation omitted)).

Perry tries to draw the opposite conclusion from the fact that the police encountered him only blocks from the bar "some eight-to-ten minutes after the shots

were fired." In Perry's view, a guilty person would be long gone by then, or at least would have fled, hid, or otherwise acted suspiciously when seeing the police. Because he remained calm and polite, even when the officers approached, Perry thinks they were compelled to conclude he was just an innocent passerby, not the shooter. "But probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts." *Wesby*, 138 S. Ct. at 588. Perry's possible innocent explanation did not require the officers to disregard other, less innocent possibilities or to ignore the other circumstances indicating guilt. *Id.* at 588–89.

## II.

At trial, Perry represented himself with standby counsel. He was in custody before and during trial. After getting in a dispute with a sergeant at the jail, he was placed in segregation. This interfered with his ability to access a computer and legal materials and, in Perry's view, violated his constitutional right to mount a defense.

Perry did not raise this issue to the district court and does so only conclusorily on appeal, with no meaningful explanation or argument. He has likely forfeited any entitlement to relief. *See, e.g.*, *United States v. Zavala*, 427 F.3d 562, 564 n.1 (8th Cir. 2005). In any event, he makes no showing that his inability to access the law library "hindered his efforts to pursue a legal claim" at trial, so his claim also fails on the merits. *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *see also United States v. Knox*, 950 F.2d 516, 519–20 (8th Cir. 1991) (explaining that pro se defendants have a right to either law-library access *or* adequate assistance from someone trained in the law, such as standby counsel).

Perry also claims his rights were violated during the trial itself. He focuses on one instance where the district court sustained a relevancy objection to his questioning of the government's DNA expert about forensic concepts and terminology. Perry asserts, again without meaningful explanation or argument, that

-4-

his cross-examination "was hindered by the court during trial, despite the seemingly relevant nature of his inquiries."

Perry questioned the expert extensively about her analysis. Before ruling on the objection, the district court discussed with Perry at length the relevance of the particular piece of information he sought to elicit. On appeal, Perry cannot say how the expert's answer to the question he was prevented from asking—"what is a 'blob'?"—would have contributed to his defense. The minimal constraint the court placed on Perry's ability to confront the government's witness posed no constitutional problem, and the court did not abuse its discretion by its evidentiary rulings. *See United States v. Brown*, 788 F.3d 830, 833 (8th Cir. 2015) ("Courts 'retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, . . . interrogation that is repetitive or only marginally relevant.'"), *quoting Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

III.

Perry argues he should not have been sentenced under the Armed Career Criminal Act ("ACCA"). ACCA mandates a sentence of at least 15 years for felons-in-possession "who ha[ve] three previous convictions . . . for a violent felony . . . committed on occasions different from one another." **18 U.S.C. § 924(e)(1)**. The district court held that Perry qualified based on (1) his convictions for first-degree aggravated robbery, simple robbery, and second-degree assault, all arising out of a holdup of a gas station; (2) another conviction for second-degree assault, following the gas-station robbery; and (3) a conviction for felony domestic assault. All of these convictions were under Minnesota law.

-5-

## A.

Perry argues his conviction for first-degree aggravated robbery is not a "violent felony." This court recently rejected Perry's argument. *See **United States v. Libby***, 880 F.3d 1011, 1014–16 (8th Cir. 2018) ("[T]he elements of Minn. Stat. § 609.245, subd. 1 categorically present a 'violent felony' under the ACCA."). *See generally **Mader v. United States***, 654 F.3d 794, 800 (8th Cir. 2011) (en banc).

## B.

Perry's second argument presents a closer question. He argues that the conduct underlying his robbery and assault convictions all took place on the same "occasion," so they should not be counted separately for ACCA purposes. If correct, he would have at most two qualifying "violent felony" convictions, not the necessary three.

Perry entered a gas station, pointed a gun at the cashier, and took money from the register. That conduct led to Perry's robbery convictions and the first of his second-degree-assault convictions, all of which the district court treated as a single ACCA predicate. Grabbing the cash, Perry ran outside, still holding the gun. Someone saw him. As Perry fled, this witness drove after him. Perry then shot toward the witness's vehicle, close enough that the witness heard a "zing" and smelled gunpowder. For that, Perry received his other second-degree-assault conviction.

The question is whether the second assault was "committed on [an] occasion[] different from" the robbery itself. **18 U.S.C. § 924(e)(1)**. Three main factors bear on this question: "(1) the time lapse between offenses, (2) the physical distance between their occurrence, and (3) their lack of overall substantive continuity, a factor that is often demonstrated in the violent-felony context by different victims or different aggressions." ***United States v. Willoughby***, 653 F.3d 738, 743 (8th Cir. 2011).

-6-

The time lapse between Perry's crimes was not long, but they were far from simultaneous. That distinguishes this case from the two Perry cites. *See id.* at 744 (explaining that the crimes at issue "occurred within seconds," "almost *simultaneously*"); *United States v. Petty*, 828 F.2d 2, 3 (8th Cir. 1987) (per curiam) (addressing the defendant's "simultaneous robbery of six individuals at a restaurant"). Also, "[c]rimes occurring even minutes apart can qualify . . . if they have different victims and are committed in different locations." *United States v. Deroo*, 304 F.3d 824, 828 (8th Cir. 2002); *accord, e.g.*, *United States v. Humphrey*, 759 F.3d 909, 912 (8th Cir. 2014).

With respect to distance, Perry committed his crimes in different locations. The robbery and the first assault occurred in the gas station, at the checkout counter. Before the second assault, Perry left the station and ran some distance away. He did not get far, but even a short distance can be enough to separate two crimes. *See United States v. Gray*, 85 F.3d 380, 380–81 (8th Cir. 1996) (holding that back-to-back burglaries of two houses "located very close to each other" were committed on different occasions); *United States v. Hamell*, 3 F.3d 1187, 1191 (8th Cir. 1993) (holding that a stabbing inside a tavern and a shooting outside the tavern "happened at different . . . places"); *cf. Willoughby*, 653 F.3d at 744 (holding that the distance factor cut against counting drug sales separately when the two buyers "stood side-by-side" and "virtually no distance separated the two sales").

Perry's crimes also had different victims. The witness who chased Perry—the victim of the second assault—had nothing to do with the initial robbery. He was outside the gas station and became involved only after Perry completed the robbery and fled. And the "aggression" Perry committed against the witness—shooting toward him—was also distinct from his threat against the gas-station cashier. *See United States v. Davidson*, 527 F.3d 703, 710 (8th Cir.) ("[C]rimes committed in rapid succession are still committed on different occasions when they 'reflect distinct aggressions.'"), *vacated in part on other grounds*, 551 F.3d 807 (8th Cir. 2008),

-7-

*quoting* **United States v. Godinez**, 998 F.2d 471, 473 (7th Cir. 1993). Having different victims and involving different aggressions can demonstrate that even "substantially simultaneous 'violent felonies'" were committed on different occasions. **Willoughby**, 653 F.3d at 742. "[T]he nature of [such] crimes enable[s] us to assess their separateness and distinctness based, not just on temporal grounds, but additionally on whether they involved different victims or 'aggressions.'" **Id.**, *quoting* **Davidson**, 527 F.3d at 710.

For his part, Perry emphasizes the close relationship between his crimes, characterizing the shooting as just an instinctive response to being pursued for the robbery. Even if true, that does not mean the crimes were committed on the same occasion. In *Levering v. United States*, this court declined to adopt a general rule that "when a person is evading or resisting arrest immediately following the actions giving rise to the arrest, subsequent offenses arising out of the evasion or resistance are part of the same criminal episode." 890 F.3d 738, 742 (8th Cir. 2018), *quoting* **United States v. Clark**, 591 F. App'x 367, 376 (6th Cir. 2014) (unpublished). *Levering* involved a defendant who led police on a high-speed chase in a stolen vehicle. *See* **id.** at 739. He crossed county lines and was convicted of assault in multiple counties, for running other cars and trucks off the road. *See* **id.** This court held that two of the assault convictions were separate for ACCA purposes, rejecting the argument that they should be merged because they were part of a single course of conduct motivated by a desire to get away with the vehicle. **Id.** at 742. There is no justification to count two of Levering's crimes but only one of Perry's.

Perry posits that our holding in *Levering*, as well as in another case, *United States v. Davidson*, rested on the fact the defendant had contact with law enforcement between his crimes. Nothing in *Levering* or *Davidson* suggests that police intervention was essential to the result in either case. *See* **Levering**, 890 F.3d at 742; **Davidson**, 527 F.3d at 707–10. To be sure, *Davidson* says that a traffic stop separating the two crimes at issue served as a "point of demarcation between

episodes." ***Davidson***, 527 F.3d at 710. But the stop was relevant there because it helped demonstrate that the first crime "was completed" and the second had not yet begun, not because contact with the police has some special significance in this context. ***Id.*** Likewise, what mattered in *Levering* was not that the pursuit involved the police, but that it lasted long enough to give the defendant "an opportunity 'to cease and desist from further criminal activity,' by discontinuing the chase or making a conscious choice to avoid assaulting other drivers whom he encountered on the road." ***Levering***, 890 F.3d at 742, *quoting* ***Davidson***, 527 F.3d at 710.

The same is true here. Perry had time after he left the gas station to choose to give up, or at least to try to escape without committing another life-threatening criminal act against a new victim. The district court did not err in counting his crimes separately.[2]

C.

Perry challenges the counting of his conviction for felony domestic assault. Domestic assault is a misdemeanor, but it can be enhanced to a felony if committed within ten years of two or more convictions for certain other crimes. **Minn. Stat. § 609.2242, subdiv. 4**. Perry's argument rests on his belief that his domestic-assault conviction was enhanced based on a second-degree-assault conviction that itself

---

[2]This holding rests on the undisputed facts in Perry's presentence investigation report. Although Perry did suggest a need for "additional factual review," he did not object to any of the relevant facts in the report, and his argument addressed the application of the legal standard, not the accuracy of the facts. *See* ***United States v. Bledsoe***, 445 F.3d 1069, 1073 (8th Cir. 2006) (explaining that if a defendant does not "make[] a specific objection to a factual allegation in the presentence report," the district court can accept the fact as true). In addition, the other documents and information offered at sentencing would not affect this holding. This court therefore need not address whether the district court properly admitted and considered those materials.

counted as a "violent felony." In Perry's view, this constitutes improper "double-dipping" and a violation of due process.

Classifying Perry's conviction as a "violent felony" is entirely consistent with the terms of the statute. Perry does not argue otherwise. As relevant, ACCA defines a "violent felony" as a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another" and is "punishable by imprisonment for a term exceeding one year." **18 U.S.C. § 924(e)(2)(B)(i)**. There is no question that Minnesota domestic assault involves force to the necessary degree. *See* **Minn. Stat. § 609.2242, subdiv. 1** (requiring the defendant to "commit[] an act with intent to cause fear in another of immediate bodily harm or death" or "intentionally inflict[] or attempt[] to inflict bodily harm upon another"); *United States v. Schaffer*, 818 F.3d 796, 798 (8th Cir. 2016). Minnesota law also clearly states the potential sentence: "Whoever violates the provisions of this section . . . within ten years of the first of any combination of two or more previous qualified domestic violence-related offense convictions . . . is guilty of a felony and may be sentenced to imprisonment for not more than five years . . . ." **Minn. Stat. § 609.2242, subdiv. 4**. And second-degree assault is a "qualified domestic violence-related offense." *See id.* **§ 609.02, subdiv. 16**. Accordingly, Perry's domestic-assault conviction comfortably fits both parts of ACCA's definition of a "violent felony."

Perry also believes that using his second-degree-assault conviction twice is constitutionally improper. He cites no authority. As the government explains, the conviction was "employed for two different purposes": first as a crime in its own right; second as an element in a different crime, involving different acts of violence. This court need not definitively resolve this issue, however, because Perry's domestic-assault conviction would have been a felony even without the earlier assault conviction. The criminal complaint in Perry's domestic-assault case (which he filed as an exhibit to his sentencing memorandum) listed three "qualified domestic violence-related offense convictions" as the basis to enhance the charge to a felony:

-10-

the second-degree-assault conviction and two unrelated convictions for making terroristic threats. *See id.* Because only two qualifying convictions are required for the enhancement, *id.* **§ 609.2242, subdiv. 4**, the terroristic-threat convictions are enough on their own. Accordingly, this court need not decide the due-process issue Perry raises.[3]

IV.

The judgment is affirmed.

STRAS, Circuit Judge, concurring.

The court's approach in addressing Perry's past crimes, and in particular whether he committed them "on occasions different from one another," falls in line with our cases but is a departure from fundamental Sixth Amendment principles. I join the court's opinion because it is a faithful application of existing circuit precedent, but I write separately to express my concerns about what is, in my view, an erosion of the jury-trial right. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . .").

The relevant facts here are simple. Years ago, Perry fired a warning shot at a witness after robbing a gas station. Thanks to the arcane workings of the Armed Career Criminal Act, he now faces a ten-year maximum sentence for each of his most

---

[3]Perry also argues the district court erred in determining his recommended sentence because his prior convictions did not qualify as "crimes of violence" under section 4B1.2(a) of the U.S. Sentencing Guidelines. *See also* **U.S.S.G. § 2K2.1(a)(2)**. This challenge depends on his ACCA argument. *See, e.g.*, **United States v. Hall**, 877 F.3d 800, 806 (8th Cir. 2017) (noting overlap between ACCA and the Guidelines). This court need not address it separately.

recent convictions if the shot and the robbery happened on the same "occasion," but a fifteen-year mandatory minimum with no upper limit if they happened on different "occasions."  18 U.S.C. § 924(a)(2), (e)(1).

The constitutional standard is simple too.  "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *see also Alleyne v. United States*, 570 U.S. 99, 103 (2013) (holding that "any fact that increases the mandatory minimum is [also] an 'element' that must be submitted to the jury").

Simple facts and simple law should lead to a simple conclusion.  A finding that Perry committed his past crimes on different occasions exposes him to a longer sentence, so the jury should make the finding, not the court.  To be sure, the Supreme Court has carved out an exception allowing district courts to find "the fact of a prior conviction."  *Alleyne*, 570 U.S. at 111 n.1; *Apprendi*, 530 U.S. at 489; *see also Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998).  But the exception is "narrow," *Alleyne*, 570 U.S. at 111 n.1, and permits the court to "do no more . . . than determine what crime, with what elements, the defendant was convicted of," *Mathis v. United States*, 136 S. Ct. 2243, 2252 (2016).

The district court did much more here.  Determining whether Perry committed his robbery and assaults on separate occasions is not just a straightforward matter of identifying the crimes he committed.  Rather, it requires closely examining what he did to commit each offense, when and where he did it, and what he did in between.  The court must then weigh "at least three factors"—the timing, location, and "overall substantive continuity" of the crimes, plus whatever else might be relevant in a particular case—in a context-specific balancing test that we still struggle to put into words. *United States v. Willoughby*, 653 F.3d 738, 742–43 (8th Cir. 2011); *see also, e.g.*, *Levering v. United States*, 890 F.3d 738, 740 (8th Cir. 2018) (lamenting that an

-12-

attempted reformulation of what counts as an "occasion" just "raise[d] more questions"). This analysis crosses the line from "identifying the crime[s] of conviction" into the forbidden territory of "explor[ing] the manner in which the defendant committed th[e] offense[s]." *Mathis*, 136 S. Ct. at 2252.

Nonetheless, our cases steadfastly insist that judges can make the heavily fact-dependent different-occasions determination because it is "among the recidivism-related facts" exempt from the general rule. *United States v. Harris*, 794 F.3d 885, 887 (8th Cir. 2015); *accord, e.g.*, *United States v. Evans*, 738 F.3d 935, 936 (8th Cir. 2014) (per curiam) (citing *United States v. Ramsey*, 498 F. App'x 653, 654 (8th Cir. 2013) (unpublished per curiam)). But there is no such exception, at least as far as the Supreme Court is concerned. There is just the one unique fact that courts may find: "the simple fact of a prior conviction." *Mathis*, 136 S. Ct. at 2252.

Indeed, if all facts having some relationship to recidivism were exempt from the Sixth Amendment, then the leading ACCA cases would not contain the reasoning that they do. In *Mathis*, the fact at issue was whether the location of a previous burglary was a building or a vehicle, *id.* at 2250; in *Descamps v. United States*, it was whether the defendant had entered a store legally or illegally, 570 U.S. 254, 259 (2013). Those facts were no less "recidivism-related" than whether Perry committed his back-to-back crimes on different occasions. Yet the opinions in both cases emphasized that letting a court find them "would raise serious Sixth Amendment concerns." *Mathis*, 136 S. Ct. at 2252; *Descamps*, 570 U.S. at 269.

I acknowledge that our approach of permitting a judge to make the different-occasions determination puts us in good company. *See United States v. Blair*, 734 F.3d 218, 228 (3d Cir. 2013) (collecting cases from most other circuits). The predominant explanation resembles our own. Most courts reason that the when and where of a past crime is inseparable from the fact of conviction, so the prior-conviction exception covers them too. *See, e.g.*, *United States v. Thompson*,

421 F.3d 278, 286 (4th Cir. 2005) ("To take notice of the different dates or locations of burglaries—something inherent in the conviction—is to take notice of different occasions of burglary as a matter of law."); *United States v. Burgin*, 388 F.3d 177, 186 (6th Cir. 2004).

Inertia may be part of the explanation. Sometimes courts just continue along the same well-trodden path even in the face of clear signs to turn around. We have missed more than a few bread crumbs leading away. The Supreme Court has all but announced that an expansive view of the prior-conviction exception is inconsistent with the Sixth Amendment.

First, in *Alleyne*, the Court characterized the prior-conviction exception as "narrow." 570 U.S. at 111 n.1. Then in *Descamps*, the Court rejected an approach allowing district courts to look at the records of a prior conviction to determine "what [a] defendant actually did," because it would extend "judicial factfinding beyond the recognition of a prior conviction." 570 U.S. at 268–69. And finally, there simply is no way to square an expansive view of the prior-conviction exception with *Mathis*, which left little doubt that a finding of whether a burglary involved a building or a vehicle—in other words, the location of the crime—cannot be treated the same as the fact of a prior conviction. 136 S. Ct. at 2252. Yet most courts, even after *Alleyne*, *Descamps*, and *Mathis*, assign judges the role of finding even *more* facts—including the timing, location, *and* nature of *multiple* convictions—in search of an answer to the vexing different-occasions question.

A misunderstanding of the permissible uses of *Shepard* documents may also account for the predominant view. Some courts claim that there is no Sixth Amendment problem as long as courts limit themselves to facts taken from charging documents, plea agreements, and comparable materials—more commonly known as *Shepard* documents. *See, e.g.*, *United States v. King*, 853 F.3d 267, 273 (6th Cir. 2017); *see also Shepard v. United States*, 544 U.S. 13, 26 (2005); *Taylor v. United*

-14-

*States*, 495 U.S. 575, 602 (1990). "[R]epurpos[ing]" *Taylor* and *Shepard* to justify judicial fact-finding, however, turns those decisions on their heads. *Mathis*, 136 S. Ct. at 2254.

*Taylor* serves as the starting point for the "categorical" approach in ACCA cases, the whole point of which (as the Court has repeatedly reminded us) is to analyze the *legal* elements of past crimes, not their underlying *facts*. *See* 495 U.S. at 600; *see also, e.g.*, *Mathis*, 136 S. Ct. at 2248; *Descamps*, 570 U.S. at 261. *Taylor* also answered the practical question of how to determine a defendant's crime (and thus what legal elements to analyze) when a criminal statute defines more than one offense. *See* 495 U.S. at 602. The answer, according to the Court, is to allow district courts to review a limited set of documents to identify the actual offense of conviction. *See id.* *Shepard*, for its part, merely reaffirmed *Taylor*'s approach and supplemented its list of acceptable documents to cover cases in which a prior conviction follows a guilty plea rather than a trial. *See* 544 U.S. at 20–21, 23.

*Shepard* documents accordingly serve a specific and narrow function; they are not an excuse for allowing courts to dig through the record to find facts. To the contrary, properly used, they do not support fact-finding at all. The Court made that abundantly clear in *Descamps* by prohibiting judges from "look[ing] to reliable materials (the charging document, jury instructions, plea colloquy, and so forth) to determine what facts [could] confidently be thought to underlie the defendant's conviction." 570 U.S. at 265–66 (internal quotation marks, brackets, and citation omitted). The reason, the Court explained, is that when there is no need to choose between multiple possible crimes, *Shepard* documents simply "ha[ve] no role to play." *Id.* at 264.

The approach the Court rejected in *Descamps* is not meaningfully different from using *Shepard* documents to make the different-occasions determination. Both call for sifting through record materials for evidence of what a defendant actually did,

either to determine whether it fits the definition of a violent felony, *see id.* at 259–60, or to determine if two or more crimes were committed on different occasions, *see King*, 853 F.3d at 274. If one improperly "convert[s] [the categorical] approach into its opposite," *Descamps*, 570 U.S. at 274, so does the other.

* * *

What the district court did in this case is "just what [the Supreme Court] ha[s] said it cannot" do. *Id.* at 270. But it is also what we have expressly and repeatedly instructed district courts they should do. *See Harris*, 794 F.3d at 887 (after *Descamps*); *Evans*, 738 F.3d at 936 (same). I reluctantly concur.

KELLY, Circuit Judge, concurring in part and dissenting in part.

I join the court's opinion except as to Part III.B. Perry objected to the facts concerning his robbery and assault convictions that were recited in the presentence investigation report and asked the court to undertake "additional factual review" of the convictions before determining whether they were committed on different occasions. Most important, Perry argued that he "was still on the property of the gas station" when he fired the gun—not "some distance away," as the court recounts. The presentence investigation report was unclear on this point, stating only that Perry "fled from the gas station on foot" before firing the gun.

Because the facts in the presentence investigation report were disputed, the district court should not have relied on them. Instead, this court's precedent called for a review of the documents approved by Shepard v. United States, 544 U.S. 13 (2005)—that is, "the charging document, jury instructions, plea agreement or plea hearing transcript, and comparable judicial records"—to determine whether the two convictions took place on different occasions. United States v. Pledge, 821 F.3d 1035, 1037 (8th Cir. 2016) (quoting United States v. Salean, 583 F.3d 1059, 1061

-16-

(8th Cir. 2009)). But I suspect that in this case, as in most cases, properly used Shepard documents would not assist the district court in its different-occasions determination, because time, place, and overall substantive continuity are facts, not legal elements, of the prior offenses. See Mathis, 136 S. Ct. at 2248 ("'Elements' are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction. . . . Facts, by contrast, are mere real-world things—extraneous to the crime's legal requirements. . . . And ACCA, as we have always understood it, cares not a whit about them." (cleaned up)).

So how is a district court to undertake the different-occasions analysis? The three-factor test used by this court calls for a factual determination, so in my view, the district court should do just that. I agree with the concurrence that judicial determination of facts that increase the penalty for a crime beyond the prescribed statutory maximum would appear to conflict with Supreme Court precedent. See Mathis, 136 S. Ct. at 2252; Descamps, 570 U.S. at 268–69; Alleyne, 570 U.S. at 103; Apprendi, 530 U.S. at 490. But that's just what our case law requires, at least until the Supreme Court, or this court sitting en banc, takes up the issue. See Levering, 890 F.3d at 741 (citing facts recited in Shepard documents when undertaking the different-occasions analysis); Evans, 738 F.3d at 936 ("[T]he question of whether prior felonies were committed on separate occasions may be resolved by a judge." (quoting Ramsey, 498 F. App'x at 654)); Willoughby, 653 F.3d at 744 (citing "the record evidence" when undertaking the different-occasions analysis); Deroo, 304 F.3d at 828 (explaining that district courts have discretion "to assess whether an evidentiary hearing" is necessary before "enter[ing] findings as to whether [prior offenses] were separate offenses or part of a continuing course of criminal conduct").[4]

_____

[4]Several other circuits have explicitly limited the different-occasions determination to Shepard documents. See United States v. King, 853 F.3d 267, 273–74 (6th Cir. 2017) (listing cases). But they continue to approve of the use of Shepard documents to find facts, not elements. See, e.g., United States v. Bordeaux, 886 F.3d 189, 197 (2d Cir. 2018) (finding the district court's reliance on a police

-17-

Based on the current state of the law in this circuit, I would remand the case to the district court to make the necessary findings regarding when, where, and how Perry committed the robbery and the assault, and then to determine whether those crimes were committed on different occasions.

_____

report not clearly erroneous because the transcript of the state-court plea colloquy confirmed the precise time that the defendant committed a prior robbery); United States v. Southers, 866 F.3d 364, 369–70 (6th Cir. 2017) (approving the district court's review of indictments to determine that one robbery took place at "the Golden Gallon," whereas the other took place at "Favorite Market"). These cases illustrate the difficulty of performing the different-occasions analysis by using Shepard documents as the Supreme Court has instructed them to be used.