COLE, Chief Judge, dissenting.
DISSENT
In United States v. King , 853 F.3d 267 (6th Cir. 2017), we placed evidentiary limitations on the ACCA's different-occasions analysis. Consistent with Supreme Court precedent, King limited the sources that courts can consider in conducting judicial factfinding regarding sentencing enhancements. Id. at 273 (citing Mathis v. United States , --- U.S. ----, 136 S. Ct. 2243, 195 L.Ed.2d 604 (2016) ; Descamps v. United States , 570 U.S. 254, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013) ; Shepard v. United States , 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) ; Taylor v. United States , 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) ). King established that " Taylor and Shepard 's limitations on the evidentiary sources and information that a federal district court may consider in determining whether a prior conviction is a predicate under the ACCA also apply when the court determines whether prior offenses were 'committed on occasions different from one another' under the ACCA." Id.
King explained that, under this " Taylor - Shepard approach," sentencing courts are "restricted to those facts that 'necessarily' underlie the prior conviction, i.e. , those facts necessarily determined beyond a reasonable doubt by the trier of fact or necessarily admitted by the defendant." Id. (quoting Shepard , 544 U.S. at 20-21, 125 S.Ct. 1254 ). And in applying the Taylor - Shepard approach, the Supreme Court has rejected the idea that "a factfinder can have 'necessarily found' a non-element-that is, a fact that by definition is not necessary to support a conviction." Descamps , 570 U.S. at 266 n.3, 133 S.Ct. 2276 ; see id. at 269-70, 133 S.Ct. 2276 ("[T]he only facts the court can be sure the jury so found are those constituting elements of the offense-as distinct from amplifying but legally extraneous circumstances."). But today, the majority finds that our holding in King still permits a sentencing court to "consider non-elemental facts such as times, locations, and victims in Shepard documents when conducting the different-occasions analysis." Maj. Op. 439. Because such a finding contradicts the Supreme Court's application of Taylor and Shepard , as well as our own holding in King , I respectfully dissent.
I.
To explain why I read our holding in King differently from the majority, I first address the Supreme Court and Sixth Circuit precedent underlying the evidentiary limitations we imposed in King . Supreme Court precedent prevents courts from conducting judicial factfinding that impacts a defendant's sentence, except in limited circumstances. Apprendi v. New Jersey , 530 U.S. 466, 487-90, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) ; Almendarez-Torres v. United States , 523 U.S. 224, 230, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). We have found that one circumstance in which sentencing courts are permitted to make findings of fact is in determining whether a defendant's prior offenses took place on different occasions for the purposes of designating him as a career criminal under the ACCA. United States v. Burgin , 388 F.3d 177, 186 (6th Cir. 2004). But, until King , we had not yet addressed the question of which evidentiary sources a sentencing court can use in conducting such judicial factfinding.
*447 The Supreme Court has taken up that question in a different but related context: determining whether a prior conviction qualifies as a generic violent felony under the ACCA. In a series of cases- Taylor , Shepard , Descamps , and Mathis -the Court placed strict limitations on the evidentiary sources that a sentencing court can consider in conducting judicial factfinding. The heart of the evidentiary restriction contained in Taylor and its progeny is that sentencing courts can only consider facts on which the conviction necessarily relied-those that a jury necessarily found or a defendant necessarily admitted-in enhancing a defendant's sentence. See Mathis , 136 S. Ct. at 2255 ("[A]n ACCA penalty may be based only on what a jury 'necessarily found' to convict a defendant (or what he necessarily admitted)," and "elements alone fit that bill; a means, or (as we have called it) 'non-elemental fact,' is 'by definition[ ] not necessary to support a conviction.' "); Descamps , 570 U.S. at 270, 277, 133 S.Ct. 2276 (focusing on whether prior convictions "require[d] the factfinder (whether jury or judge) to make that determination," because sentencing courts cannot consider facts "unnecessary to the crime of conviction"); Shepard , 544 U.S. at 20-21, 26, 125 S.Ct. 1254 (focusing on whether defendant had "necessarily admitted" the elements of the generic offense such that the "plea had 'necessarily' rested on the fact" in question); Taylor , 495 U.S. at 602, 110 S.Ct. 2143 (focusing on whether "jury necessarily had to find" all of the facts that would be required to convict the defendant of the generic offense). And the Court has made clear that "the only facts the court can be sure" are necessary to the conviction "are those constituting elements of the offense," as opposed to "non-elemental fact[s]." Descamps , 570 U.S. at 269-70, 277, 133 S.Ct. 2276 ; Mathis , 136 S. Ct. at 2255.
The Court has outlined two justifications behind the elemental-facts restriction that are relevant in the case before us. The first is that such a restriction "avoids the Sixth Amendment concerns that would arise from sentencing courts' making findings of fact that properly belong to juries," including facts that increase the defendant's maximum penalty. Descamps , 570 U.S. at 265, 269, 133 S.Ct. 2276. The Court has explained that the same constitutional concern is present in the plea context: "as Shepard indicated, when a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements; whatever he says, or fails to say, about superfluous facts cannot license a later sentencing court to impose extra punishment." Id. at 270, 133 S.Ct. 2276 (citing Shepard , 544 U.S. at 24-26, 125 S.Ct. 1254 ). The Court found that the elemental-facts restriction outlined in Taylor and Shepard assuages this constitutional concern, because the existence of a prior conviction necessitates that the jury or judge found the facts that made up the elements of that prior conviction. Id. at 269-70, 133 S.Ct. 2276. Because the same cannot be said for non-elemental facts, the Court explained that, under the Taylor - Shepard approach, it is "irrelevant" whether a non-elemental fact is accurate or whether the defendant ever admitted the fact in question: if the crime for which the defendant was convicted "does not require the factfinder (whether jury or judge) to make that determination," the sentencing court cannot make that determination in assessing the prior conviction. Id. at 265, 277, 133 S.Ct. 2276. Thus, the Descamps Court found that, in enhancing a defendant's sentence "based on his supposed acquiescence to a prosecutorial statement" in a plea colloquy, the sentencing court "did just what we have said it cannot: rely on its own finding about a non-elemental *448 fact to increase a defendant's maximum sentence." Id. at 270, 133 S.Ct. 2276.
The second justification is that the elemental-facts restriction "averts 'the practical difficulties and potential unfairness of a factual approach.' " Id. at 265, 133 S.Ct. 2276. From a practical standpoint, the consideration of non-elemental facts would require sentencing courts to "expend resources examining (often aged) documents for evidence that a defendant admitted in a plea colloquy ... facts that, although unnecessary to the crime of conviction, satisfy an element of the relevant generic offense," and the "meaning of those documents will often be uncertain." Id. at 270, 133 S.Ct. 2276. And from a fairness perspective, "the statements of fact in [such documents] may be downright wrong," especially because a defendant "often has little incentive to contest facts that are not elements of the charged offense." Id. at 270-71, 133 S.Ct. 2276 ; see also Mathis , 136 S. Ct. at 2253 ("Statements of 'non-elemental fact' in the records of prior convictions are prone to error precisely because their proof is unnecessary."). Given these concerns, the Court concluded that the "ACCA [treats non-elemental] facts as irrelevant: Find them or not, by examining the record or anything else, a court still may not use them to enhance a sentence," even where such a limitation seems "counterintuitive." Id. at 2251, 2253.
In King , we first addressed the question of which evidentiary sources a sentencing court can consider for the purposes of the ACCA's different-occasions analysis. We found that "the legislative history and constitutional concerns" animating the Court's decisions in Taylor , Shepard , Descamps , and Mathis "apply with equal force when a sentencing court undertakes the different-occasions inquiry." 853 F.3d at 272-73. For that reason, we reaffirmed Burgin 's rule that judges can engage in factfinding in conducting the different-occasions analysis, but we found that, "in identifying those facts, a sentencing judge is constrained to reviewing evidence approved by Taylor and Shepard ." Id. at 274 (citing Burgin , 388 F.3d at 183 ). We noted that the Taylor - Shepard approach applied in the different-occasions analysis because of the previously articulated constitutional and fairness concerns posed by judicial factfinding that enhances a defendant's sentence:
What most convinces us, then, that Taylor and Shepard 's evidentiary restrictions extend to the different-occasions question is the Supreme Court's expressed concern over a judge finding facts that become the basis of an ACCA enhancement. "Under ACCA, the court's finding of a predicate offense indisputably increases the maximum penalty. Accordingly, that finding would (at the least) raise serious Sixth Amendment concerns if it went beyond merely identifying a prior conviction." Descamps , 133 S. Ct. at 2288. Just so with the different-occasions question: a sentencing court's finding that prior violent felonies were "committed on occasions different from one another" can be as dispositive of an ACCA enhancement as finding that a conviction is a third ACCA predicate. (Indeed, this is that case.) So if a sentencing judge, in answering the different-occasions question, became the trier of fact regarding when and where the prior offenses occurred, that procedure would raise the very constitutional concern identified in Shepard and reaffirmed in Descamps and Mathis .
The Taylor - Shepard approach quells this constitutional concern. Under the framework of those cases, a judge is restricted to those facts that "necessarily" underlie the prior conviction, Shepard , 544 U.S. at 20-21, 125 S.Ct. 1254, i.e. , those facts necessarily determined *449 beyond a reasonable doubt by the trier of fact or necessarily admitted by the defendant, see Descamps , 133 S. Ct. at 2288. Thus, under Taylor and Shepard , a sentencing judge is not finding facts in the first instance, but merely identifying findings or admissions that were previously made under constitutional safeguards.
Id. (parallel citations omitted). Accordingly, King concluded that " Taylor and Shepard 's limitations on the evidentiary sources and information that a federal district court may consider in determining whether a prior conviction is a predicate under the ACCA also apply when the court determines whether prior offenses were 'committed on occasions different from one another' under the ACCA." Id.
And in importing this restriction into the different-occasions analysis, King made unambiguously clear that we understood that the core of the evidentiary restriction under the Taylor - Shepard framework is that sentencing courts can only consider facts on which the conviction necessarily relied. Id. at 272-73, 133 S.Ct. 2276 ("The Taylor - Shepard approach quells this constitutional concern. Under the framework of those cases, a judge is restricted to those facts that 'necessarily' underlie the prior conviction, i.e. , those facts necessarily determined beyond a reasonable doubt by the trier of fact or necessarily admitted by the defendant."). Accordingly, I read King to import the elemental-facts restriction into the different-occasions analysis.
II.
Because King adopted the evidentiary limitations imposed by Taylor and its progeny into the different-occasions analysis, I would find that sentencing courts conducting the different-occasions analysis can look to Shepard documents and consider facts therein that are "necessary" to the conviction in determining whether the offenses were committed on different occasions, but sentencing courts cannot consider any non-elemental facts in applying the ACCA enhancement. Instead, the majority finds that King intended only to limit sentencing courts' consideration to any fact contained within Shepard documents, regardless of whether the fact was necessary to the conviction. As the Supreme Court put it in Mathis , "[e]verything this Court has ever said about ACCA runs counter to the [majority]'s position. That alone is sufficient reason to reject it[.]" 136 S. Ct. at 2257.
Taylor , Shepard , Descamps , and Mathis confine the sentencing court's consideration to certain types of evidence , not certain types of documents . In Shepard , the Court held that, in determining whether a defendant who pleaded guilty had "necessarily admitted" the elements of the generic offense, sentencing courts could only consider "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or ... some comparable judicial record of this information." Id. at 26, 125 S.Ct. 1254. But these documents cannot be considered wholesale; rather, they serve as shorthand for the types of permissible evidence that they frequently contain. Mathis , 136 S. Ct. at 2256-57 ("[S]uch a 'peek at the [record] documents' is for 'the sole and limited purpose of determining whether [the listed items are] element[s] of the offense.' (Only if the answer is yes can the court make further use of the materials[.] )") (internal citation omitted).
The Supreme Court has made abundantly clear that the evidentiary limitation in Taylor and its progeny require an "elements-only approach," because "an ACCA penalty may be based only on what a jury *450 'necessarily found' to convict a defendant (or what he necessarily admitted)," and a " 'non-elemental fact,' is 'by definition[ ] not necessary to support a conviction.' " Id. at 2254-55 (internal citations omitted) (alteration in original). "Accordingly, Descamps made clear that when the Court had earlier said (and said and said) 'elements,' it meant just that and nothing else." Id. at 2255.
King itself also made clear that it was looking to only those facts "necessarily admitted," not to the charging documents as a whole. There, the government had argued that, "in limiting a court applying the ACCA to what King necessarily admitted, we apply Shepard 's restrictions too strictly." 853 F.3d at 276. But King noted that " Shepard made clear that the task was to identify whether a prior conviction 'necessarily' rested on the elements of the generic offense," and "with a plea-colloquy transcript, the written plea agreement, or a comparable record, 'a later court could generally tell whether the plea had 'necessarily' rested on the fact identifying the burglary as generic.' " Id. at 277 (quoting Shepard , 544 U.S. at 20-21, 26, 125 S.Ct. 1254 ). King added:
But, one might argue, if the Supreme Court had truly wanted to limit courts making the ACCA-predicate determination to those facts necessarily admitted by the defendant or necessarily found by a jury, then why reference "charging documents" generally, rather than the necessary facts or elements within the charging documents? The answer, we think, lies in the issue presented to the Court in Shepard . Insofar as a sentencing court's task is to identify which elements underlie a prior conviction, the terms of the charging document will always be appropriate to consider: a conviction necessarily means the elements-but not "superfluous facts," Descamps , 133 S.Ct. at 2288 -charged in the indictment were found by a jury or admitted by the defendant.
This understanding of Shepard is not new. We have previously read Shepard to permit courts to consider only those facts that a defendant necessarily admitted in pleading guilty. See United States v. Medina-Almaguer , 559 F.3d 420, 424 (6th Cir. 2009) ("[ Shepard ] requires a judicial record that identifies the facts a defendant 'necessarily admitted' in entering a guilty plea-as Shepard itself demonstrates.").
Id.
The majority correctly notes that its interpretation of King "accords with the approach adopted by the Second, Fourth, Fifth, Seventh, Tenth, Eleventh, and D.C. Circuits." Maj. Op. 442. But these other circuits' approaches do not conform to the restriction we set out in King . As the concurring judges explained in United States v. Perry , 908 F.3d 1126 (8th Cir. 2018), the majority rule runs contrary to the Supreme Court's approach in Taylor and Shepard , which has been made only more evident in more recent cases like Descamps and Mathis . Perry , 908 F.3d at 1134 (Stras, J., concurring) ("Inertia may be part of the explanation. Sometimes courts just continue along the same well-trodden path even in the face of clear signs to turn around."); id. at 1137 (Kelly, J., concurring) ("[I]n most cases, properly used Shepard documents would not assist the district court in its different-occasions determination, because time, place, and overall substantive continuity are facts, not legal elements, of the prior offenses," and judicial factfinding of non-elemental facts appears to "conflict with Supreme Court precedent.").
In Perry , Judge Stras explained why permitting consideration of non-elemental *451 facts contained within Shepard documents was constitutionally problematic:
A misunderstanding of the permissible uses of Shepard documents may also account for the predominant view. Some courts claim that there is no Sixth Amendment problem as long as courts limit themselves to facts taken from charging documents, plea agreements, and comparable materials-more commonly known as Shepard documents. "[R]epurpos[ing]" Taylor and Shepard to justify judicial fact-finding, however, turns those decisions on their heads. ...
Shepard documents ... serve a specific and narrow function; they are not an excuse for allowing courts to dig through the record to find facts. To the contrary, properly used, they do not support fact-finding at all. The Court made that abundantly clear in Descamps by prohibiting judges from "look[ing] to reliable materials (the charging document, jury instructions, plea colloquy, and so forth) to determine what facts [could] confidently be thought to underlie the defendant's conviction." The reason, the Court explained, is that when there is no need to choose between multiple possible crimes, Shepard documents simply "ha[ve] no role to play."
The approach the Court rejected in Descamps is not meaningfully different from using Shepard documents to make the different-occasions determination. Both call for sifting through record materials for evidence of what a defendant actually did, either to determine whether it fits the definition of a violent felony, or to determine if two or more crimes were committed on different occasions. If one improperly "convert[s] [the categorical] approach into its opposite," Descamps , 570 U.S. at 274 [133 S.Ct. 2276], so does the other.
Id. at 1135-36 (Stras, J., concurring) (internal citations omitted). Because King held that sentencing courts could only consider "facts that 'necessarily' underlie the prior conviction, i.e. , those facts necessarily determined beyond a reasonable doubt by the trier of fact or necessarily admitted by the defendant," 853 F.3d at 273, the majority rule falls short here for the same reasons that the judges concurring in Perry explained.
I also part ways with the majority's interpretation of King regarding the very constitutional and fairness concerns that King set out to avoid in adopting the Taylor - Shepard approach. The Supreme Court has repeatedly held that relying on non-elemental facts that a defendant admitted in a plea colloquy is constitutionally problematic because, "as Shepard indicated, when a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements; whatever he says, or fails to say, about superfluous facts cannot license a later sentencing court to impose extra punishment." Descamps , 570 U.S. at 270, 133 S.Ct. 2276. As the Court explained in Descamps :
A defendant, after all, often has little incentive to contest facts that are not elements of the charged offense-and may have good reason not to. [D]uring plea hearings, the defendant may not wish to irk the prosecutor or court by squabbling about superfluous factual allegations. In this case, for example, Descamps may have let the prosecutor's statement go by because it was irrelevant to the proceedings. He likely was not thinking about the possibility that his silence could come back to haunt him in an ACCA sentencing 30 years in the future.
Id. at 270-71, 133 S.Ct. 2276 (internal citations omitted). And in Mathis , the Court made a similar assessment regarding the *452 unfairness of a sentencing court's use of non-elemental facts to enhance a defendant's sentence:
Statements of "non-elemental fact" in the records of prior convictions are prone to error precisely because their proof is unnecessary. At trial, and still more at plea hearings, a defendant may have no incentive to contest what does not matter under the law; to the contrary, he "may have good reason not to"-or even be precluded from doing so by the court. When that is true, a prosecutor's or judge's mistake as to means, reflected in the record, is likely to go uncorrected. Such inaccuracies should not come back to haunt the defendant many years down the road by triggering a lengthy mandatory sentence.
136 S. Ct. at 2253 (internal citations omitted).
The facts of this case illustrate just how relevant those concerns remain in the context of the different-occasions analysis. Here, the government asks us to add five years to Hennessee's sentence because, after the prosecutor recited a jumbled version of the facts that was inconsistent with the locations listed in the indictment and that left the timing of the two offenses unclear, Hennessee summarily agreed those facts were "basically true" in order to facilitate a plea deal. (Plea Tr., R. 24-3, PageID 94-95.)
Nor are the practical concerns we noted in King avoided by the majority's interpretation. Our decision in King noted that many of the practical concerns outlined in Mathis and Descamps applied in the context of the different-occasions analysis. Id. at 272-73, 133 S.Ct. 2276. For example, "Congress's desire to avoid mini-trials almost assuredly covers not only proceedings to answer the ACCA-predicate question but also proceedings to answer the different-occasions question." Id. at 273, 133 S.Ct. 2276. As we noted in King , the Court's concerns regarding fact-finding are amplified in the context of the different-occasions analysis: the majority itself acknowledges that, "because facts relevant to the different-occasions inquiry, such as the time and location of the prior offense, are most often not elements of the offense, a proceeding to answer the different-occasions question may well be more extensive than one to answer the ACCA-predicate question." Maj. Op. 443 (quoting King , 853 F.3d at 273 ).
This case provides an excellent example of the types of mini-trials that would unfold by permitting district courts to look to non-elemental facts contained within Shepard documents. The government argues that the Shepard documents straightforwardly demonstrate that the offenses were committed on different occasions, contending that the plea colloquy demonstrates the offenses took place at different times and locations, and Hennessee admitted to the facts in the plea colloquy. But Hennessee resists this characterization of the Shepard documents on three separate grounds.
First, there are several discrepancies between two different Shepard documents before the sentencing court-namely, the indictment and the plea colloquy. For example, as the majority notes, both victims' names are different across the two documents: changing from "Jerry Wainwright" to "Ms. Terry Wainwright," and from "Mudhafar J. Aljashami" to "Mr. Alah Basabi (ph.)." (Indictment, R. 24-1, PageID 81-82; Plea Tr., R. 24-3, PageID 94). More critically, the address of the apartment where the government asserted the first robbery occurred differs in the indictment and the plea colloquy, changing from "4960 Edmondson Pk." to "960 Edmondson Pike." (Indictment, R. 24-1, PageID 80; Plea Tr., R. 24-3, PageID 94.) The impact *453 of this discrepancy is made especially clear in conjunction with the government's request that we take judicial notice of the fact that a Mapco Express currently located at 2827 Smith Springs Road in Nashville, Tennessee, is located roughly 13-14 miles from 960 Edmondson Pike in Brentwood, Tennessee, based on a present-day Google Maps search. Hennessee opposes this request, noting that none of the documents surrounding his conviction list an exact address on Smith Springs Road, and arguing that "[w]hile the government, looking at Google Maps in 2018, guesses that the incident in 2005 occurred where a Mapco gas station is located on Smith Springs Road thirteen years after the fact, that is speculation." (Appellee Br. 37-38 n.3.) Additionally, Hennessee points out that the plea colloquy transcript indicated that the prosecutor seemed unsure about the location of the gas station robbery, and he notes that a Mapco gas station also exists on Edmondson Pike. A second Google Maps search reveals that the Mapco station Hennessee references is less than a mile from 4960 Edmondson Pike, the address listed for the apartment in the indictment.
Even apart from the discrepancies across documents, the prosecutor's recitation of the facts within the plea colloquy was muddled, representing that the offenses took place "just a few minutes" apart, or perhaps twenty minutes apart (5:00 a.m. to 5:20 a.m.), or maybe fifty minutes apart (4:30 a.m. to 5:20 a.m.). (Plea Tr., R. 24-3, PageID 94-95.) Any of these scenarios would be a reasonable reading of the prosecutor's recitation of the facts, yet only the final option is expressly covered by the case the government cites as support. (Appellant Br. 34 (citing United States v. Brady , 988 F.2d 664, 665 (6th Cir. 1993) (en banc) (finding that "two armed robberies of different victims at different locations committed approximately thirty minutes apart were 'committed on occasions different from one another' ").)
Finally, Hennessee did not present his own version of the facts, nor did he clarify the timing or location of the offenses at the plea colloquy. Hennessee's so-called admission was that, when he was asked to confirm whether the prosecutor's disjointed recitation of the facts was "basically true," he responded, "Yes, sir." (Plea Tr., R. 24-3, PageID 95.) Because the court added the qualifier "basically," a sentencing court could reasonably find that Hennessee would not have quibbled with details like times or locations, given that he agreed with the basic elemental facts that he had robbed or attempted to rob each of the victims referenced in the plea colloquy, which were the only facts essential to the plea. See Descamps , 570 U.S. at 265, 133 S.Ct. 2276 ; Mathis , 136 S. Ct. at 2253. Given that the robberies were close in both time and location, the difference between whether the facts as described were "true" or "basically true" may be outcome determinative.
I raise these disputes not to cast light on which of the parties would prevail, but to highlight that permitting sentencing courts to review non-elemental facts within Shepard documents will require courts to resolve the very type of disputes that King and the Supreme Court sought to avoid. In contrast, the elemental-facts restriction would forbid sentencing courts from considering these facts and avoid these time-intensive disputes altogether.
III.
The majority rejects King 's elemental-facts restriction because limiting sentencing courts to consideration of "elemental facts in Shepard documents which rarely involve date, time, or location" would leave courts "hamstrung" in "making most different-occasions *454 determinations," given that such a restriction "would render violent-felony convictions adjudged together by the same court inseparable in the different-occasions context." Maj. Op. 443. The majority says such an interpretation "would not make sense." Id. I disagree.
First, King 's evidentiary limitation only impacts the different-occasions analysis in a specific subset of cases: those in which the relevant prior offenses were charged or pleaded together. If Hennessee's prior convictions had been for three aggravated robberies in Davidson County, Tennessee-one in 2006, one in 2010, and one in 2016-the district court would not have needed to turn to the Shepard documents to determine whether the offenses were committed on different occasions.
Second, even within the context of these cases, sentencing courts are only "hamstrung" by King in the sense that they would not be permitted to consider evidence of non-elemental facts-they will not have to search for the evidence elsewhere; rather, their inability to consider non-elemental facts will simply result in fewer findings that offenses committed on the same day qualify as separate predicate offenses under the ACCA. The majority says that this result "would not make sense," as it places too many restrictions on district courts. Maj. Op. 443. However, I would not determine the applicability of a constitutional safeguard based on whether it would hamstring a district court, especially where the very purpose of the constitutional protection is to limit the types of evidence on which courts can rely. For example, a defendant's right to confront the witnesses against him also prevents courts from considering all the available evidence. Yet we would not question whether this constitutional safeguard applies even where the excluded testimony would otherwise be material to the district court's analysis.
Third, the majority asserts that it "would not make sense" to preclude courts from applying an ACCA enhancement based upon multiple offenses committed on the same day. The majority reasons that, if the elemental-facts restriction were in place, a defendant who "robbed five different businesses in different cities across a twelve-hour period" would not qualify as an armed career criminal if those robberies were charged in the same indictment, pled guilty to at the same time, and contained in the same judgment of conviction. Maj. Op. 443-44. But it has not always been a foregone conclusion that such offenses would or should suffice as separate predicates. To the contrary, in the years after Congress added the requirement that the three predicate offenses be "committed on occasions different from one another" to the ACCA, five judges on this court dissented from that conclusion in one of our en banc decisions, arguing that counting offenses committed on the same day as separate predicate offenses would effectively eliminate "the concept of career in the general philosophy behind (not to mention the title of) the Armed Career Criminal Act" and render the new "committed on occasions different from one another" language "utterly meaningless." Brady , 988 F.2d at 675-77 (Jones, J., dissenting) ("In essence, the majority holds that Brady has had a 'career' in less than an hour. It misses logic to hold that a 'career' can comprise the events of a single evening, or more aptly put, less than one hour, and thereby subject him to fifteen years of incarceration."). To be sure, neither this court nor the other circuits adopted this understanding of the different-occasions requirement. But I am persuaded that such an approach, which garnered the support of five judges on this court, makes sense, especially if the constitutional concerns identified in Taylor and its progeny compel such a result.
*455 Fourth, King spoke directly to the majority's concern that forbidding sentencing courts from "consider[ing] the admission of these facts describing locations and times ... reads too many restrictions into the Shepard - Taylor source limitation and unduly hinders a district court's ability to determine whether offenses occurred on different occasions." Maj. Op. 444. King contains the following language regarding the continued vitality of the different-occasions analysis in conjunction with evidentiary limitations imposed by Taylor and Shepard :
The Government also raises a practical argument. It asks, how can a district court answer the different-occasions question if it is "blinded" to the evidence it needs to make that determination by Taylor and Shepard 's restrictions?
We recognize that in some cases Taylor and Shepard evidence will not be sufficient for a district court to determine that prior offenses occurred on different occasions while a broader swath of evidence would permit the determination. But a similar practical argument was raised and rejected in Shepard . There, it was argued that a police report, "free from any inconsistent, competing evidence," would have reliably shown that the defendant had burglarized a building (as the ACCA's burglary predicate required), whereas, absent the report, it was (likely) impossible to identify which of several alternatives was the basis of the prior conviction. See Shepard , 544 U.S. at 17-18, 22 [125 S.Ct. 1254] [.] This concern, the Court explained, was not "sufficient justification for upsetting precedent," particularly as Taylor 's evidentiary limitation "was the heart of [that] decision." See id. at 23 [125 S.Ct. 1254]. The Court further noted that "time has enhanced even the usual precedential force" of Taylor because in the intervening fifteen years, Congress had made no change to the statute. Id . In reaching our decision based on the same reasoning, we likewise respect precedent.
853 F.3d at 274-75 (parallel citations omitted).
In this passage, King made clear that its decision to import the evidentiary restriction at the heart of Taylor limits the breadth of the ACCA's different-occasions analysis, and it openly acknowledged that this evidentiary restriction would prevent sentencing courts from considering otherwise available evidence that would demonstrate that the prior offenses occurred on different occasions. Still, it found that the fact that these restrictions would hinder sentencing courts was not sufficient justification to stray from the evidentiary limitation at the heart of Taylor . Id. This same intuition is reflected in Mathis , where the Supreme Court concluded that sentencing courts cannot use non-elemental facts to enhance a defendant's sentence under the ACCA, even in cases where that restriction seems impractical or "counterintuitive." 136 S. Ct. at 2251, 2253 ("That rule can seem counterintuitive: In some cases, a sentencing judge knows (or can easily discover) that the defendant carried out a 'real' burglary, even though the crime of conviction also extends to other conduct. No matter.").
We cannot, in this case, rewrite King altogether. A straightforward reading of King and the cases on which it relies makes clear that, "whether for good or for ill, the elements-based approach remains the law." Mathis , 136 S. Ct. at 2257.
IV.
For the above reasons, I respectfully dissent.